## CARDWELL v. AMERICAN RIVER BRIDGE CO.

*(Circuit Court, D. California.   March 3, 1884.)*

**NAVIGABLE RIVERS—UNSETTLED QUESTION OF STATE AND FEDERAL POWERS.**
 The supreme court of the United States, in the case of *Escanaba Co.* v. *Chicago,* 2 Sup. Ct. Rep. 187, determines that the control of "rivers wholly within the bounds of a state" is held by the legislature thereof, until the congress of the United States passes some act assuming control for the national government.   In the *Wheeling Bridge Case,* 13 How. 519, the same court held that the mere confirmation by congress of a compact theretofore made between Kentucky and Virginia, relative to keeping open the Ohio river, was tantamount to an act assuming such control.   Under these two decisions, *quære* whether such navigable rivers of California are within the control of that state, or have been removed therefrom by the act of congress admitting it into the Union, which act contains these words:  "All navigable rivers within the state of California shall be common highways and forever free, as well to the inhabitants of that state as to the citizens of the United States, without any tax, duty, or impost therefor."   Decided *(pro forma)* the latter.
 *Escanaba Co.* v. *Chicago,* 2 Sup. Ct. Rep. 187, and other cases reflecting on the matter in discussion, noted and commented upon, and their various distinguishing points mentioned.

In Equity.

*Scrivener & McKinney,* for complainant.

*H. O. & W. H. Beatty* and *J. B. Haggin,* for defendant.

SAWYER, J.   This case is clearly within the rule as laid down in the *Wallamet Bridge Case,* 7 Sawy. 127; S. C. 6 FED. REP. 326, 780.   If that case can be sustained in the broad terms of the rule stated, then the demurrer in this case should be overruled.   Since that decision was rendered, the supreme court of the United States has decided the case of *Escanaba Co.* v. *Chicago,* 107 U. S. 679, S. C. 2 Sup. Ct. Rep. 185, which defendant insists overrules the principle announced in the *Wallamet Bridge Case;* that, under the clause of the act admitting Oregon into the Union, the state has no power to authorize the construction of bridges over the navigable waters of the state which shall materially obstruct their navigation.   It must be admitted, I think, that there is language in the opinion that favors that view; and I am by no means certain that the court did not intend to go as far as its broadest language indicates.   It is sought to distinguish this case from the *Chicago Bridge Case.*   If it can be distinguished, it must be on the following grounds:  In the *Blackbird Creek Case,* 2 Pet. 245, arising in Delaware, the *Schuylkill Bridge Case,* 14 Wall. 442, in Pennsylvania, and all others since decided, following the decisions in those cases, it was held that congress, under its authority to regulate commerce and establish post-roads, had power to control, for those purposes, the internal navigable waters of the various states; that as soon as congress legislates in regard to any such navigable waters, its power becomes exclusive and the states cannot afterwards authorize any material obstruction to their navigation; but, till congress acts, the legislature of any state has the power to authorize the ob-

struction of any navigable waters within its borders, by the erection of bridges, dams, or other structures for the convenience and advantage of commercial intercourse. It was held, with respect to the navigable waters of Delaware and Pennsylvania, that congress had never acted, and, consequently, the legislation of these states authorizing the obstructions complained of was valid.

The question, therefore, is, has congress acted, with reference to the navigable waters of California, by legislating upon the subject, in such sense that its control has superseded the power of the state legislature and become exclusive? If so, then the case is distinguishable from any of the cases, other than the *Wheeling Bridge Case,* before decided by the supreme court. If congress has so acted, that legislation is found in the act admittiing California into the Union, which act provides "that *all* the navigable waters within the state *shall be common highways,* and forever free, as well to the inhabitants of said state as to the citizens of the United States, without any tax, impost, or duty theiefor." 9 St. 452, 453. How can the American river be a "common highway," or how can it be "free" to "the citizens of the United States," or "the inhabitants of the state," with a low bridge across it, without a draw, and so constructed as to preclude all navigation by steamers or vessels? To be a common highway, or to be free to all to use as such, involves a capacity to be *practically used as a highway,* and such capacity is wanting where there is an impassable barrier or obstruction. This provision is a law of congress, and it is valid, not. as a compact between the United States and the state of California, but as a law of congress, passed by virtue of the constitutional power of congress to regulate commerce among the states and with foreign nations, and to establish post-roads. *Pollard's Lessee v. Hagan,* 3 How. 224, 225, 229, 230; *Wheeling Bridge Case,* 13 How. 566; *Mining Debris Case,* 18 Fed. Rep. 753. What does this provision of the statute mean? Can there be any reason to. suppose that congress intended anything else than to make or continue the navigable waters of the state, by virtue of its power to regulate commerce, practical free highways, and to take away the power of the state to destroy or wholly obstruct their navigability? Had nothing been said upon the subject in the act of admission, but subsequently, after the admission of California into the Union "on an equal footing with the original states in all respects whatever," congress had passed a separate, independent act, with no other provision in it, providing "that all the navigable waters within the state of California shall be common highways, and forever free, as well to the inhabitants of said state as to the citizens of the United States, without any tax, impost, or duty therefor," would anybody suppose that congress, by the passage of such an act, under the circumstances indicated, could have any other purpose than to take control of the navigable waters of the state for the purpose of preventing any interference with, or obstruction to, their navigability, or "so far as might be necessary to insure their free navigation?"

Or would it be seriously doubted that congress had acted opon the subject-matter within the meaning of the terms of the decisions in the *Blackbird Creek* and *Schuylkill Bridge Cases* mentioned? If such would be the construction in an independent act passed subsequently to the admission of the state, it must be the construction of the same language as found in the act of admission. If such is not the purpose of this provision, it would be difficult, I think, to determine what the purpose is. Following the direct decision upon this point in the *Wheeling Bridge Case*, 13 How. 565, I had no difficulty in concurring with the district judge in the ruling that a similar provision in the act admitting Oregon into the Union constituted legislative action by congress upon the subject-matter, of such a character as to withdraw it from the jurisdiction of state legislation.

In the *Chicago Bridge Case, supra,* the court still recognizes the power of the national government to control the navigable waters of the several states. It says:

"The power vested in the general government to regulate interstate and foreign commerce involves the control of the waters of the United States, which *are navigable in fact, so far as it may be necessary to insure free navigation,* where, by themselves or their connection with other waters, they form a continuous channel for commerce among the states or with foreign countries." 107 U. S. 682; S. C. 2 Sup. Ct. Rep. 185.

The question, then, is whether the provision quoted from the act of admission is legislation by which congress takes · control of the navigable waters of the state, "so far as it may be necessary to insure their free navigation;" and whether there can be a "common highway," or "free navigation," where the passage of steamers or other vessels is absolutely obstructed by impassable barriers thrown across the channels of waters otherwise navigable, in fact. In the case of the state of Illinois, neither the act authorizing the inhabitants to form a state government, (3 St. 428,) nor the resolution admitting the state into the Union, (Id. 526,) contains the provision, or any provision of a character similar to that, found in the acts admitting California and Oregon into the Union. Both the act and the resolution relating to Illinois are silent upon the subject, and I am not aware that there is any subsequent legislation on the subject affecting the *status* of Illinois. In the *Chicago Bridge Case,* the supreme court seems to regard the provision of the ordinance of 1787 as inoperative after the admission of Illinois as a state. Says the court:

"Whatever limitation upon its powers as a government, while in a territorial condition, whether from the ordinance of 1787 or the legislation of congress, *it ceased to have any operative force,* except as voluntarily adopted by her, after she became a state of the Union. On her admission she became entitled to and possessed all the rights and dominion and sovereignty which belonged to the original states. She was admitted, and could be admitted, only on the same footing with them. The language of the resolution admitting her is ' on an equal footing with the original states in all respects whatever.' 3 St. 536. Equality of constitutional right and power is a condition of all the states of the Union, old and new. Illinois, therefore, as was well ob-

served by counsel, could afterwards exercise the same power over rivers within her limits that Delaware exercised over Blackbird creek, and Pennsylvania over the Schuylkill river." 107 U. S. 688, 689; S. C. 2 Sup. Ct. Rep. 185.

There being no legislation by congress, then, assuming the control of the navigable waters of Illinois, there was nothing more to prevent legislation by the state in regard to the navigable waters of Illinois than there was to prevent legislation by the states of Delaware and Pennsylvania. But I do not understand it to be held, or intimated, that congress cannot, by legislation in the interest of interstate commerce, take control of any one, or all, of the navigable waters, either of Illinois, Delaware, or Pennsylvania. Only it has not yet done so. I suppose congress might take control of any one navigable river by name, as the Sacramento, for the purpose of facilitating interstate commerce, or it might take control, generally, of all the navigable waters of any particular state, without reference to the waters of other states, and there might well be special reasons, making it desirable with reference to some particular waters, or some particular states, which are not applicable to other waters, or other states. I do not understand that special legislation as to particular rivers or particular states, not applicable to others, would affect the "constitutional right or power," or the equality, of the states in any particular. All of the states are alike equally subject, at any and all times, when congress sees fit to act, to the power of congress to "regulate commerce among the states" and with foreign nations, and the power to "establish post-roads" within their several borders and over their several navigable waters. But the regulation of commerce on the waters of, and establishment of post-roads in, some states, before it is done on the waters of or in other states, does not affect their constitutional *status* of equality. Congress may take its own time and occasion to regulate the navigable waters of a state without affecting its constitutional condition of equality. I suppose congress might now, by an act duly passed, apply the provision in the acts of admission of Oregon and California to Illinois, Delaware, and Pennsylvania—to any one or all of them; and if it should do so, it would seem that there ought not to be any doubt that the object would be to take exclusive control for the benefit of commerce, and to suspend the power of regulation, or at least of obstruction and destruction, by the states. But until some legislation of the kind is had, those states concerning whose waters congress has not legislated, under the decisions referred to, may themselves legislate upon the subject. If the provision in the California act of admission is legislation taking control of the navigable waters of the state for the benefit of commerce, then congress has legislated in reference to the navigable waters of California, while it has not done so with reference to the navigable waters of Delaware, Pennsylvania, and Illinois; and, in this respect, California and Oregon stand upon a footing

entirely different from that of those states, and the decisions as to them are inapplicable. The foregoing observations indicate the distinction, if any sound distinction there be, and it seems to me that there is, between this case, the *Wallamet Iron Bridge Case,* and the *Wheeling Bridge Case,* and those other cases cited, already decided by the supreme court. If the distinction is not sound, then it appears to me that the *Wheeling Bridge Case* must also be regarded as overruled, although the supreme court does not expressly indicate any intention to overrule it.

There is an intimation, however, in the opinion of the *Chicago Bridge Case,* not necessary to the decision of the case upon the other views expressed by the court, that the provision of the ordinance of 1787, corresponding to the provision in question in the acts of admission of California and Oregon, if in force, would not affect the question. 107 U. S. 689; S. C. 2 Sup. Ct. Rep. 185. If this be so, then the distinction referred to is of no practical consequence. But the bridges, and other obstructions referred to as illustrations following this intimation, were all *draw*-bridges, or other *partial* obstructions, while the bridge now in question is an absolute, unqualified, entire obstruction to the navigation of the river. In view of these intimations, and other general observation in the opinion of the court, and not feeling quite certain as to how far the supreme court intended to go on these questions, and not wishing even to seem to disregard the decisions of the supreme court, I shall, for the purposes of this case, sustain the demurrer and dismiss the bill. The bill presents the case fully, and it will be much better for all parties to have the effect of the provision of the act of admission determined now before going to the expense of a trial. As the complainant has already submitted to the obstruction for many years, the right, I think, should be finally determined on appeal, before an injunction should be decreed. The supreme court does not appear to me to have considered carefully, or finally determined, what the purpose and effect of the provision in question in the act of admission is. It must have some object, and if that object be not to protect and preserve the navigability of those waters against obstructions equivalent to destruction by authority of the state, what was the purpose? The fact that the provision is in the act of admission, instead of in subsequent independent legislation, cannot affect its construction, or its force and effect. But for the observations in the *Chicago Bridge Case,* which I think unnecessary to the decision, and believing that congress had acted upon the subject, I should have followed the ruling of the circuit court in the *Wallamet Bridge Case,* and what I understand to be the decision in the *Wheeling Bridge Case,* and overruled the demurrer. I do not wish to be regarded as having changed my own views upon the rulings in the *Wallamet Bridge Case.* I still think it similar to the *Wheeling Bridge Case,* and distinguishable from any other cases hitherto decided by the supreme court brought to my attention. I

still think the decree in that case correct, on the ground that congress has acted upon the subject, also on other grounds than the point discussed in this case. But the case will be appealed, and if the circuit court was wrong, the rights of the parties will be finally settled by the supreme court. I only write this opinion to indicate upon what distinction, if any, the case I suppose should be taken out of the decision of the *Chicago Bridge Case,* with the hope that the attention of the supreme court will be specially directed to that supposed distinction.