SCHEURER *v.* COLUMBIA-STREET BRIDGE CO.

*(Circuit Court, D. Oregon.  April 19, 1886.)*

WATERS AND WATER-COURSES — NAVIGABLE WATERS IN OREGON — POWER OF THE STATE OVER.

Under the ruling in *Cardwell* v. *Bridge Co.*, 113 U. S. 205, S. C. 5 Sup. Ct. Rep. 423, the provision in the act of congress of February 14, 1859, (11 St. 383,) admitting Oregon into the Union, which declares that "the navigable waters of said state shall be common highways, and forever free, as well to the inhabitants of said state as to all other citizens of the United States, without any tax, duty, impost, or toll therefor," does not prevent the state from authorizing the erection of a bridge across the Wallamet river, at Portland, however much it may impede and obstruct the navigation thereof, nor has the United States circuit court any jurisdiction of a suit to enjoin the same.

Suit in Equity for an Injunction.

*P. S. Willis*, for plaintiff.

*George H. Durham*, for defendant.

DEADY, J. This suit is brought to restrain the defendant from erecting a bridge across the Wallamet river, between the foot of Madison street, in Portland, and T street, in East Portland. An application for a provisional injunction was heard on the bill and a general demurrer thereto.

The plaintiff is a riparian owner, whose land has a frontage of 200 feet on the west bank of the Wallamet river, and is situate about 1,000 feet above the site of the proposed bridge; and his complaint is that the erection of the bridge will so obstruct and hinder the navigation of the river as to prevent vessels engaged in the commerce of this port from, at least with safety and convenience, reaching his property. The bill states that the river at the site of the proposed bridge is about 1,475 feet wide, with a ship channel of about 400 feet in width, and that the bridge will consist of six solid spans of 200 feet each in length, resting on piers built in the river, and one section 270 feet long, resting on a draw pier as a pivot, which, when turned parallel with the stream, will give a passage-way of 120 feet in width on either side of said pivot pier; that the distance from the lower chord of the span is only eight feet above high-water mark; and the construction of the proposed bridge will obstruct and impede the navigation of the river, and the use of the harbor of Portland, which extends from the lower end of the city southward a distance of about three miles, and for a half mile above the plaintiff's property.

The defendant claims the right to build a bridge under an act of the legislature of the state, passed February 26, 1885, (Sess. Laws, 472,) as amended by the act of November 24, 1885, (Sp. Sess. Laws, 14;) but the plaintiff alleges that the same is void or inoperative, as being in conflict with the act of congress passed February 14, 1859, (11 St. 383,) for the admission of Oregon into the Union, wherein it is provided that "all the navigable waters of the state shall be common highways, and forever free, as well to the inhabitants of said state as to all the other citizens of the United States, without any tax, duty, impost, or toll therefor."

The questions arising on this demurrer were considered by this court in *Hatch* v. *Wallamet Iron Bridge Co.*, 7 Sawy. 127, S. C. 6 Fed. Rep. 326, and again in *Wallamet Bridge Co.* v *Hatch*, 9 Sawy. 643, S. C. 19 Fed. Rep. 347, where it was held that, by the act of 1859, congress, in the exercise of its power to regulate commerce between the several states, had declared the Wallamet river, as a means of said commerce, "a common highway," and therefore the state of Oregon could not authorize any one to build a bridge across the same which, the circumstances considered, would needlessly impede or obstruct the navigation thereof; and that the question of what constitutes such impediment or obstruction arises under said act of con-

gress, and therefore this court has jurisdiction of a suit involving the same. The doctrine of this case was followed in the opinion of the court in *Cardwell* v. *American River Bridge Co.*, 9 Sawy. 662; S. C. 19 Fed. Rep. 562; but on an appeal to the supreme court it was held (113 U. S. 205, and 5 Sup. Ct. Rep. 423) that the provision in the act admitting California into the Union concerning the navigable waters therein, which is similar to that in the one admitting Oregon, does not of itself deprive the state of the power possessed by other states to authorize the erection of bridges over navigable waters therein; and that the provision is only intended to prevent the use of navigable streams by private parties, to the exclusion of the public, and the exaction of tolls for their navigation.

The proposed bridge at the foot of Madison street is five blocks, or about 1,300 feet, further south than the one in *Hatch's Case*, and is otherwise much less objectionable, the opening at the draw being 120 feet in the clear instead of only 100. But it matters not what is the character of the bridge, or how much of an obstruction it will be to navigation, if the state authorizes it, and the United States has passed no law on the subject of impediments and obstructions to the navigation of the river, this court has no jurisdiction to prevent the erection of the same. The *Hatch Case* is now pending in the supreme court on appeal, and may be decided at this term, but it is not probable that any modification of the ruling in the *Cardwell Case* will be made; and if congress has no power to pass an act to prevent the obstruction of the navigable waters of the state by the erection of solid bridges or otherwise, unless the same applies to the navigable waters of all the states, as the argument in that case seems to imply, then it is not apparent how the provisions in the acts relating to the admission of Oregon and California are valid, even as against a claim under the state to the exclusive use of any of the navigable waters therein, or to the exaction of tolls for the navigation thereof. Certainly, congress has as much right to legislate against physical obstructions being made to the navigation of the waters in a state, in detail and specially, as to prevent their exclusive use by any one, or the exaction of tolls for the same in that way.

But admitting the power in congress to legislate specially on this subject, the court in the *Cardwell Case* went so far as to hold that, notwithstanding the act of congress in effect declares the American river a common highway, forever free "to the citizens of the United States, the state of California may authorize the erection of a low, solid bridge across it, which prevents it from being used as a highway by any one. The act, says the court, has but one object, namely, "to insure a highway open to all, without preference to any." But I respectfully submit that on this interpretation of the act a better definition of its purpose would be: "It intends to secure an open highway to all or *to none*, as the state may judge expedient."

But whatever my judgment in the premises may be, this construc-

tion of the legislation by congress is binding on this court, and therefore I must refuse this injunction, and sustain the demurrer to the bill, and dismiss it; and it is so ordered.