## C. C. Steere *v.* D. K. Oakley, Appellant.

*Usury may be implied from circumstances.*

The reservation of more than legal interest may be implied from circumstances ; when a debtor making payments specifically as interest, knowingly pays more than the legal rate it is a payment of usurious interest reserved or contracted for within the statutory meaning.

*Usury—Right of recovery barred by the statute.*

A final settlement and payment having been made in 1887, of a loan secured by judgment on which usurious interest had been paid from time to time, a suit brought in 1889 to recover the usury is barred by the Act of May 28, 1858, P. L. 622.

*Usury—Voluntary payment—Duress.*

There can be no duress in law except by an unlawful act. There is no duress involved in a threat to enforce a legal demand in a legal manner. Payments of usurious interest for extension of time made under threat of legal proceedings on an overdue obligation cannot be said to be extorted by duress or to be other than voluntary payments of usurious interest.

*Usury—When knowledge of presumed.*

Where a debtor knows at the outset the exact amount of interest accruing for a year at the legal rate, and thereafter voluntarily pays more than this sum annually as interest on the same debt, he will not be permitted

to recover it back after the lapse of six months under the pretense that he did not know that the creditor was charging more than six per cent.

*Mistake—Recovery of money alleged to have been overpaid.*

A settlement of accounts having been made when the plaintiff had every means at hand of determining with accuracy the credits which should have been applied, it must be presumed that they were so applied and that the balance accepted to be correct was in fact the amount remaining due. A settlement so reached can be impeached only for fraud or mistake, and the case should not be permitted to go to the jury in a suit to recover alleged overpayments when the evidence of fraud or mistake is so weak that it would be the duty of the court to set aside a verdict based on it.

Argued Jan. 13, 1897. Appeal, No. 32, Jan. T., 1897, by defendant, from judgment of C. P. Lackawanna Co., June T., 1889, No. 531, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Assumpsit to recover money alleged to have been paid by mistake. Before EDWARDS, J.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $661.69. Defendant appealed.

*Errors assigned* among others were (13) In answer to defendant's first point. The point and answer are as follows : "1. Under all the evidence in this suit the verdict must be for the defendant. · *Answer :* I cannot affirm this point because I cannot direct a verdict one way or the other. There are disputed facts to be decided by you, and as you view the facts, in the light of the law stated by the court, so will your verdict be." (14) Answer to defendant's second point. The point and answer are as follows : 2. If the claim presented by the plaintiff be one of usurious interest, the suit is barred by the statute of limitations. *Answer :* With the qualification that if the usurious interest is voluntarily paid and has been agreed upon or reserved by the parties, this point is affirmed."

*H. M. Hannah* and *S. B. Price*, for appellant.—The question of the voluntary or involuntary character of the payments was

one of law for the court and not one of fact for the jury: Colwell v. Peden, 3 Watts, 327; De La Cuesta v. Ins. Co., 136 Pa. 62.

In order to render a payment involuntary there must be compulsion, actual, present and potential, inducing the payment by force of process available for instant seizure of person or property. And the party so paying must give notice of the illegality of the demand, and of his involuntary payment: Peebles v. Pittsburg, 101 Pa. 304; Harvey v. Girard Bank, 119 Pa. 212; De La Cuesta v. Insurance Co., 136 Pa. 62.

The threat of legal process is not such duress as will render the payment of money involuntary: De La Cuesta v. Ins. Co., 136 Pa. 62.

One who voluntarily pays money, with a full knowledge of the facts, or the means of knowledge, cannot recover it back, though it be in excess of the amount legally due: Real Est. Savings Inst. v. Linder, 74 Pa. 371; Krumbhaar v. Yewdall, 153 Pa. 479.

In order to warrant an attempt at the correction of a mistake, the party alleging it must establish it by precise, clear and indubitable proof: Stine v. Sherk, 1 W. & S. 195; Breneiser v. Davis, 134 Pa. 1; 15 Am. & Eng. Ency. of Law, 626.

And it is the duty of the court in the first instance to decide that there is evidence sufficient to warrant the jury in finding that a mistake has been made before the question is submitted: Schettiger v. Hopple, 3 Grant, 54; Breneiser v. Davis, 134 Pa. 1; Reed v. Horn, 143 Pa. 323.

Usurious interest included in a judgment confessed cannot be recovered back after the judgment has been paid by the defendant in full: Hopkins v. West, 83 Pa. 109; Rutherford v. Boyer, 84 Pa. 347; Montague v. McDowell, 99 Pa. 265.

*Chas. W. Dawson* and *A. A. Vosburg*, for appellee.—The act of 1858 only applies to cases where excessive interest has been paid on a contract to pay usury: Fitzsimmons v. Baum, 44 Pa. 32; Heath v. Page, 48 Pa. 130, 146; Heath v. Page, 63 Pa. 108, 121; Schutt v. Evans, 109 Pa. 625.

Where money is obtained by deceit or unfair practices, it may be recovered back: Mathers v. Pearson, 13 S. & R. 258; Taylor v. Commissioners, 3 P. & W. 112.

Where money is paid under a mistake of fact, it can be recovered back.

If defendant did not make a mistake, he made a wilful and deliberate false computation, and deceived plaintiff as to the amount due. This of course would be a fraud, and in such case the money can be recovered back : Taylor v. Commissioners, 3 P. & W. 112; Mathers v. Pearson, 13 S. & R. 258 ; Motz v. Mitchell, 91 Pa. 117 ; Coon v. Canal Co., 14 Luz. R. 461 ; Brooks v. Presbyterian Church, 128 Pa. 408.

For instance, money is not paid voluntarily when paid under a mistake of fact: McKibben v. Doyle, 173 Pa. 579 ; Meridith v. Haines, 14 W. N. C. 364.

A common mistake of fact for which money may usually be recovered back, arises in computing interest: Worley v. Moore, 97 Ind. 15 ; Boon v. Miller, 16 Mo. 457 ; Hathaway v. Hagan, 59 Vt. 75.

Again, money is not paid voluntarily, when deceit or unfair dealing was used in obtaining it: Taylor v. Commissioners, 3 P. & W. 112.

OPINION BY SMITH, J., July 23, 1897:

Under an arrangement between the parties to this action, Oakley, the defendant, on January 1, 1873, purchased a judgment and accompanying mortgage for $945.27 against the plaintiff Steere. From time to time payments were made, and twice the judgment was amicably revived; November 4, 1879, for $1,229.51, and February 23, 1885, for $1,600.

In July, 1876, Steere borrowed $500 from Oakley, for which he gave a judgment. From time to time payments were made on this ; it was twice amicably revived ; and on June 4, 1886, it was satisfied.

On October 6, 1887, the parties made a settlement of the first judgment and mortgage ; Oakley having first called on Steere for a settlement about four weeks previously. Steere had kept memoranda of the payments alleged to have been made by him, and at the time of settlement had a full statement of the dates and amounts. A computation by Oakley embracing the payments which he admitted were to be credited on the mortgage, and exhibiting the balance which he claimed as due, was laid before Steere and his son; the latter having

been brought by Steere to assist him in making the settlement. It set out with the debt of $945.27 with "interest paid to January 2, 1877," followed by computations of interest, and payments from time to time; the latter being for the following amounts, without date: $17, $30, $96, $67.43, $116. The balance shown was $1,243.18. This was examined by Steere and his son, as the latter testified, for "about three quarters of an hour to an hour." This witness further says that he "looked over the payments and the calculation," and found the statement correct "as far as anything I saw." He was not certain that the parties "spoke of each item of payment as they passed down the calculation;" but no objection was made, and, as the witness further testified, "We took the statement as correct; we made no further claim at that time." The settlement was then completed by payment of the balance shown by the computation. This statement was retained by Steere, and offered in evidence by him on the trial.

There is no allegation that in this settlement any fraud was practiced by Oakley. The computation shows, with substantial accuracy, the balance due at the time, on the basis of the items which it embraced. Prima facie the settlement was correct and showed the balance actually due. Steere never exhibited to Oakley any error in the credits or the computation, or any correction leading to a different result. Had this statement of the account been received by Steere from Oakley, with reference to a settlement, but without payment, and retained without objection made within a reasonable time, it would be presumed correct. Submitted to him and examined as it was, with a view to payment of the balance appearing due, and with all the memoranda at hand for testing its correctness, acquiescence and payment on his part carry the presumption of its correctness to the verge of conclusiveness.

On May 14, 1889, Steere commenced this action. After service of the summons, the cause rested until March 2, 1895, when the declaration was filed. This consists of the common counts, and a statement of dates and items with this introductory heading: "The following is a copy of the account on which the above action is brought." This statement is not, however, a copy of book entries, nor does it set forth matters that may be proved by book entries. In fact, it exhibits no indebt-

edness of any kind. Its items refer to payments some made in cash and some by note; but by whom, to whom, on what account made, in what manner they create an indebtedness, who is the debtor or who is the creditor, nowhere appears. It has no apparent connection with the common counts; it neither aids them nor is aided by them; and, with or without them, as the presentation of a cause of action is wholly unintelligible. Eliminating the common counts, which, under the procedure act of 1887, have no place in, pleading: Bank v. Soap Co., 161 Pa. 134; Smith Co. v. Smith, 166 Pa. 563; no cause of action is set forth. But as no question respecting the sufficiency of the declaration has been raised by the appellant, we do not think it necessary to consider its defects except incidentally. The case may be disposed of on other grounds.

While the cause of action is not disclosed by the pleading, the suit appears from the evidence to have been brought to recover an alleged over-payment of the debt secured by the judgment and mortgage. The evidence of payments preceding the settlement in October, 1887, consists of notes, receipts, and the testimony of the parties. From the plaintiff's testimony, it would appear that the amount finally paid was more than the amount remaining due on the mortgage, with legal interest. The defendant testifies that the principal and accrued interest, at the date of the purchase by him, was $985 instead of $945. He further denies the receipt of some of the payments testified to by the plaintiff, and testifies that others consisted of interest in excess of the legal rate, agreed on by the parties from year to year. It further appears that part of the second judgment was included in a revival of the first, though the amount is not stated; thus adding to the uncertainties of the case. The questions arising from the evidence were, apparently, whether the debt had been overpaid, and, if so, whether the overpayment consisted of usurious interest reserved or contracted for, or was due to a mistake in the computation of interest at the legal rate. If the former, the act of May 28, 1858, would bar a recovery, as the action was not brought within six months as required by that act; Bank.v. Roseberry, 81 Pa. 309; Hopkins v. West, 83 Pa. 109; Rutherford v. Boyer, 84 Pa. 347. If the latter, the statute would not be a bar.

The payments testified to by Steere correspond with those

set forth in the "copy of account" accompanying the declaration. According to his testimony, he paid interest at six per cent, but being unable to compute it he trusted to Oakley's computations and paid accordingly. He made the first payment when the mortgage was assigned to Oakley, January 1, 1873, by giving his note for $56.70 as a year's interest in advance, with a recorder's fee of $2.50. December 31, 1873, he gave his note for $66.38; January 30, 1874, he paid $54.00 in cash; thereafter, until 1886, his payments were partly by note and partly in cash — "paying what money I had and giving my note for the balance"—though in five of the intervening years no payments were made.

In the plaintiff's testimony, and the "copy of account" that forms part of the declaration, the character of the payments is thus stated:

(1) January 1, 1873, Note $56.70. Plaintiff: "I gave that note for interest of the advanced year, that year to come, at six per cent." Account: "1873, Jan. 1, Note for advance interest, $56.70."

(2) December 31, 1873, Note, $66.38. Plaintiff: "I gave a note for $66.38 to apply on the mortgage." Account: "1873, Nov. 31, Note for interest, $66.38."

(3) January 30, 1874, Cash $54.00. Plaintiff: "I paid cash indorsed on the mortgage $54.00." Account: "1874, Jan. 30, Cash interest on mortgage, $54.00." Both show also a payment of $3.90 "for costs of entry." Indorsement on mortgage: "Received Dec. 31, 1873, of Clark Steere by note $54.00 to apply on within mortgage."

(4) January 21, 1875, Note, $59.13; cash, $56.72. Plaintiff: "It was given $59.13, as he called it as interest to apply on the mortgage at six per cent. He figured up how much the interest would be for the year to come, and we would put it into a note. The same day that note was given I paid cash on the mortgage, indorsed on the mortgage, $56.72." Account: "1875, Jan. 21, Note advance interest, $59.13; Cash interest on mortgage, $56.72." Indorsement on mortgage: "Received January 21, 1875, the interest on the within to Jan. 1, 1875."

(5) January 3, 1876, Note, $45.34; cash $20.00. Plaintiff: "I gave a note for advance interest, $45.34. I paid the same day $20.00 cash. I was to pay the interest on the mortgage,

and he figured it up $65.34; so I paid $20.00 and gave a note for the balance." Account: "1876, Jan. 3, Note advance interest, $45.34; Cash interest, $20.00."

(6) January 2, 1877, Note, $44.62; Cash, $20.00. Plaintiff: "I gave another note that year, $44.62; the same day I paid $20.00 cash again. I went down there to pay the interest and he figured it up at that; he said it would be at six per cent, $64.62, and so I paid it in that note and that cash."

(7) January 1, 1879, Cash, $73.70. Plaintiff: "I had the money; he figured the interest up to what it would be at that time, and I paid it." Account: "1879, Jan. 1, Cash interest, $72.00."

(8) January 30, 1879, Order, $16.07. Plaintiff: "He sent an order up there, kind of receipt, for me to pay $16.07, and I paid that." Account: "1879, Jan. 30, Paid orders D. K. Oakley, $16.07."

(9) November 23, 1880, Note, $10.00; Cash, $63.70. Plaintiff: "I gave a note for $10.00, and the same day cash $63.70. He was kind of punching me up for interest, and I got a little money, and I went down there, and I had $63.70, and I gave the note for the rest. He figured it up and said the interest was $73.70 due on the mortgage." Account: "1880, Nov. 23, Give note for interest $10.00; Cash interest paid, $63.70."

(10) January 3, 1881, Note $30.00; Cash $43.70. Plaintiff, "I went down to pay, and he figured it up, and said the interest would be $73.70, and I paid $43.70, and gave a note for $30.00." Account: "1881, Jan. 3, Note for interest, $30.00; Cash same day, 43.70."

(11) June 4, 1886, Cash, $96.00. Plaintiff: "I paid him the $96.00 on the mortgage. He figured the interest up on the mortgage at six per cent; he claimed I owed him $1,600 at that time." Account: "1886, June 4, Cash receipt $96.00." Receipt on judgment for $1,600, "to apply on the above stated judgment bond."

(12) December 24, 1886, Cash, $96.00. Plaintiff: "I supposed I was paying the $96.00 to apply on the mortgage. He said the mortgage was $1,600 due on it, and he figured up $96.00 interest." Account: "1886, Dec. 24, Cash receipt, $96.00." Receipt on judgment, "to apply on the above stated judgment."

(13) July 1, 1887, Credit $10.00. Plaintiff: "July, 1887, I lent him a mowing machine ten days, that he was to allow me $10.00 for." Account: "1887, July 1, use of mowing machine ten days, $10.00."

(14) September 9, 1887, Cash $116. Plaintiff: "Sept. 9, 1887, paid by Solomon Young a receipt for $116. He wanted some money two years and a half before that, and I told him Young was owing me some, and he might pay him $100, and it ran two years and a half before he gave me any credit on it, and he figured up the interest, what the two years and a half would be, and gave me this receipt." Account: "1887, Sept. 9. Paid Solomon Young, $116."

The next payment was on the settlement, October 6, 1887, of the balance shown by Oakley's computation, already mentioned, $1,243.18.

The other items of the account relate to the judgment for $500, and have no bearing on the mortgage.

Thus the plaintiff's testimony, coupled with his account, shows beyond question that these payments were made specifically as interest. The evidence further shows that, on a former trial of the cause, Steere testified that the payments were made as interest. The over-payment for which the action seems to have been brought was thus a payment of interest above the legal rate.

The payment of more than the legal rate of interest is not unlawful. By the act of 1858 however, if such payment is "reserved or contracted for," the excess paid, above the legal rate, can be recovered back only in an action brought within six months after payment; while if paid otherwise this limitation of the statute does not apply. This action not having been brought within six months after payment, whether the excess paid by the plaintiff can here be recovered back depends on whether the usurious interest paid was reserved or contracted for within the meaning of the statute.

The evidence as to an express contract for more than the legal rate of interest is conflicting; the plaintiff denying it, and the defendant asserting it for at least a part of the period of indebtedness. But the reservation of more than the legal rate may be implied from circumstances. When a debtor, making a payment specifically as interest, knowingly pays more than

the legal rate, it is a payment of usurious interest reserved or contracted for within the statutory meaning; an instance of such payment is found in the case (formerly quite common) of the extension of a loan from time to time on payment of usurious interest at each extension. The transactions in the present case were apparently of this character. One half of the debt was overdue when assigned to Oakley, and the remainder matured August 11, 1873. The payments of interest, though not all were usurious, manifestly implied the extensions which the defendant actually enjoyed for more than fourteen years.

There can be no reasonable ground for doubting Steere's knowledge that he was paying more than the legal rate of interest. While declaring that he could not "figure down to the cents," in computing interest, he admits his knowledge that $60.00 was the legal interest on $1,000; that the interest on $900 would be not quite $60.00; and that Oakley, in his computations, "was figuring it too big." Still more conclusive was the fact, testified to by him, that his first note, for $56.70, was for a year's interest at six per cent. As bearing on the question of usury, it is a significant circumstance that this note was drawn to Nichols, the assignor of the mortgage, as payee; and from the uncontradicted testimony of Oakley this was done with a view to evading the usury law. Steere thus knew, at the outset, that $56.70 was the legal interest on $945.27; and whenever he paid more than this as a year's interest he knew that he was paying more than the legal rate. This note remained in his possession from the time it was taken up by him until the settlement, and, were it necessary, he could always refer to it as showing the amount of a year's legal interest on the debt. His assertion that he was not knowingly paying more than six per cent is inconsistent, also, with the contention that his payments were involuntary, and were extorted by the duress of threatened legal proceedings for the collection of the principal. There is no element of duress in the case, and the payments were not, in contemplation of law, involuntary. There can be no duress, in law, except through an unlawful act. There is no duress involved in a threat to enforce a legal demand in a legal manner; and this is the utmost that is alleged on the part of the plaintiff in his testimony that Oakley threatened to collect the debt unless it was paid. The extortion of usurious interest, by such

a threat, is to be redressed by an action for its recovery within six months, under the act of 1858.

The question to be determined here is whether there was such evidence as should have been submitted to the jury in support of the plaintiff's contention. The rule on this point is well settled. In Imp. Co. v. Munson, 14 Wall. 442—an ejectment for land in Pennsylvania—it was said by CLIFFORD, J., " Nor are judges any longer required to submit a question to the jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. . . . In every case, before the evidence is left to the jury, there is a preliminary question for the judge, not literally whether there is no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." This view was affirmed and illustrated in Pleasants v. Fant, 22 Wall. 116; Mr. Justice MILLER saying: " It is the province of the court, either before or after verdict to decide whether the plaintiff has given evidence sufficient to support or justify a verdict in his favor. Not whether on all the evidence the preponderating weight is in his favor—that is the business of the jury ; but conceding to all the evidence offered the greatest probative force which, according to the law of evidence, it is fairly entitled to, is it sufficient to justify a verdict ? . . . . If the court is satisfied, that, conceding all the inferences which the jury could justifiably draw from the testimony, the evidence is insufficient to warrant a verdict for the plaintiff, the court should say so to the jury."

The same rule has long been held by the courts of our own state. In a recent case in the Supreme Court, it was said : " Where the evidence is so weak that it would be the duty of the court to set aside the verdict of the jury, there is no propriety in submitting it : " Holland v. Kindregan, 155 Pa. 156, Per Curiam. Further citation of authorities, on a point so well settled, is needless.

In the present case, when the settlement was made the plaintiff had in his possession all notes, receipts, and other memoranda of his payments to the defendant. In the absence of fraud or mistake, it must be presumed that all of these which the

parties recognized as having a place in the settlement were duly taken into account. There is no evidence and no allegation that anything was omitted to the prejudice of the plaintiff that should have been included in the settlement. With the means at hand of determining with accuracy the credits which should be applied on the mortgage, it must be presumed that they were so determined and applied and that the balance which was accepted as correct was in fact the amount remaining due. The settlement thus reached can be impeached only for fraud or mistake. There is in the declaration no allegation of either fraud or mistake; indeed, outside the common counts, which are indefinite, and under the procedure act of 1887 are not to be considered, there is no allegation of any act, omission or circumstance of any kind on which a recovery is sought. The record does not disclose the issue between the parties, and the evidence leaves it obscure. It is sufficient, however, to say, from a careful examination of the evidence, that there is nothing in it that can warrant a jury in finding either fraud or mistake in the settlement. It was wholly insufficient to justify the submission of the case to the jury, and the defendant's first point should have been affirmed.

Judgment reversed.