NORFOLK & W. RY. CO. v. GARDNER, Sheriff.

(Circuit Court of Appeals, Fourth Circuit. May 9, 1908.)

No. 784.

1. COURTS—UNITED STATES CIRCUIT COURT OF APPEALS—APPEAL AND ERROR—ASSIGNMENTS OF ERROR—SUFFICIENCY.

Rule 11 of the Circuit Courts of Appeals (150 Fed. xxvii, 79 C. C. A. xxvii), requiring assignments of error to set out separately and particularly each error asserted and intended to be urged, is for the purpose of facilitating the business of the court, and must be observed.

2. TRIAL—DIRECTION OF VERDICT—DISCRETION OF COURT.

The direction of a verdict is discretionary with the trial judge.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 401.]

3. MASTER AND SERVANT—INJURY TO SERVANT—RUNNING RAILROAD TRAIN BACKWARD AT NIGHT.

The running of a railroad train at night a distance of 84 miles backward, with no headlight to light the track in front of it, subjects the trainmen to extra and unusual hazard, and requires from the railroad company at whose orders it is done a degree of care and caution to keep the track free from obstructions commensurate with such extra risk.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 264–275.]

In Error to the Circuit Court of the United States for the Northern District of West Virginia, at Martinsburg.

Cleon Moore and Marshall McCormick (Theodore W. Reath, on brief), for plaintiff in error.

M. J. Fulton and D. C. O'Flaherty (Joseph W. Cox and F. L. Bushong, on brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and PURNELL and WADDILL, District Judges.

PURNELL, District Judge. On the 15th day of March, 1907, appellee commenced his action by the issuance of a writ of summons from the circuit court of Jefferson county, W. Va., for damages in the sum of $10,000, and at March rules filed a declaration. This suit or action was duly removed to the Circuit Court of the United States for the Northern District of West Virginia and tried therein. There was a motion to remand, which motion was overruled, and the cause tried before a jury, and verdict in favor of the plaintiff for the sum of $5,000. A motion in arrest of judgment and motion for new trial were made by defendant below, appellee here. The court overruled these motions and entered judgment in favor of the plaintiff, and defendant appealed, assigning the following errors:

"(1) The verdict is contrary to the law and the evidence. (2) Because of the errors happening on, in, and by the rulings of the court during the progress of the case. (3) Because of the misdirection of the court in the instructions given by it to the plaintiff. (4) Because of the refusal of the court to instruct

the jury on behalf of the defendant in the form in which the instructions were presented to the court, and also because of its amendments, alteration, and modification of certain of the instructions asked for by the defendant, and particularly because of its refusal to give instruction 5, to the effect that if the giving of the clearance card by Scott, the local operator, to Hendrickson, the engineman, was the proximate cause of the injury, the plaintiff could not recover. (5) Because of the refusal of the court on the motion of the defendant to direct a verdict in favor of the defendant company. (6) There are other matters apparent upon the face of the record which the defendant company relies upon in support of its motion to set aside the verdict of the jury and in arrest of judgment."

The several motions aforesaid, including one made in apt time to direct a verdict in favor of the defendant, were overruled by the court, to which action on the part of the court defendant excepted and tendered 13 bills of exception, numbered from 1 to 13, consecutively, which bills of exception were allowed, signed, sealed, and made a part of the record, and defendant sued out this writ of error.

The court might dispose of this case under its rules, if strictly enforced, without passing upon the merits of the controversy. These rules are reasonable, plainly stated, and must be followed by counsel bringing causes to this court by appeal or writ of error. They are made for this purpose and with this view, and must be enforced. "Rule 11, Assignment of Error" (150 Fed. xxvii, 79 C. C. A. xxvii), provides:

"The plaintiff in error or appellant shall file with the clerk of the court below, with his petition for the writ of error or appeal, an assignment of errors which shall set out separately and particularly each error asserted and intended to be urged. No writ of error or appeal shall be allowed until such assignment of error shall have been filed. When the error alleged is to the admission or rejection of evidence the assignment of error shall quote the full substance of the evidence rejected or admitted. When the error alleged is to the charge of the court the assignment of errors shall set out the part referred to totidem verbis whether it be to instructions given or instructions refused. Such assignment of errors shall form part of the record and be printed with it. When this is not done, counsel will not be heard except at the request of the court; and errors not assigned according to this rule will be disregarded, but the court at its option may notice a plain error not assigned."

Assignments 2, 3, and 6 are not in conformity with this rule, and may be disregarded; but, notwithstanding these imperfections, we have carefully considered the same and are of opinion that they are without merit.

The fifth assignment of error is based on a misconception of the law. The presiding judge in a United States court may direct a verdict when in his judgment such direction meets the ends of justice; but he cannot be compelled to do so. He is primarily responsible for the result of litigation before him. As said by this court in Huntt v. McNamee, 141 Fed. 294, 72 C. C. A. 441, the courts of the United States have always exercised the right to control the disposition of causes pending before them whenever the allegations of the pleadings or the evidence introduced in support thereof has failed to make out a case. Merchants' Bank v. State Bank, 10 Wall. 604, 19 L. Ed. 1008; Pleasants v. Fant, 22 Wall. 116, 22 L. Ed. 780. Fair-minded men could, as appears from the record, draw more than one reasonable

conclusion from the testimony. In the latter quoted case of Pleasants v. Fant the court says, after discussing the duty or right of the trial judge:

"But, as was said by this court in the case of Improvement Company v. Munson, 14 Wall. 448, 20 L. Ed. 867, recent decisions of high authority have established a more reasonable rule that in every case before the evidence is left to the jury there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it upon whom the onus of proof is imposed. It is the duty of the court in its relation to the jury to protect parties from unjust verdicts arising from ignorance of the rules of law and of evidence, from impulse or passion or prejudice, or from any other violation of his lawful rights in the conduct of a trial. This is done by making plain to them the issues they are to try, by admitting only such evidence as is proper on these issues and rejecting all else, by instructing them in the rules of law by which that evidence is to be examined and applied, and, finally, when necessary, by setting aside a verdict which is unsupported by evidence or contrary to law."

Of these duties it appears the trial judge had a clear conception and discharged them in an eminently proper way. To set aside a verdict is a matter of discretion vested in the judge, subject to review in some cases; but he cannot be compelled to exercise the discretion to direct a verdict any more than he can to set aside a verdict. Verdicts are not as a rule subjects of review in an appellate court.

Considering the fourth assignment of error, it seems that Hendrickson, an engineman, as he is called, was operating under orders a somewhat unusual train, made up of two engines and a caboose running backward, and running thus for a distance of 84 miles at night. He could not use the usual strong headlight, as he was running backwards and had no light on the tender, except an ordinary lantern, which tended rather to obstruct his view of the track for any distance. It is contended by counsel for appellant this was not an unusual train on the Norfolk & Western Railway, nor on some other roads; but we cannot agree with counsel in this respect. At night running backwards without a headlight for a distance of 84 miles at a speed of about 18 miles an hour presents a case of extrahazardous risk to any reasonable mind; and the company so operating the same assumes the burden of the exercise of the degree of care and caution commensurate with the extra hazards to which the servant is exposed, and in determining the question of negligence the entire facts and circumstances must be taken into consideration. The question of fellow servant does not arise. The engineman was operating under orders he was required to obey, issued by the train dispatcher, whose duty it was to direct the movements of the trains, and, among other things, to know the movements of every train on the road. We cannot assume that Hendrickson was not required to obey orders. To have refused to have done so would have brought him in direct conflict with the orders of his superiors, and perhaps subjected him to dismissal. The part of the charge intended to be covered by the fourth assignment of error is the following, granted at plaintiff's request:

"It was the duty of the defendant company towards an employé engaged in the running and operating of its train under its direction to use ordinary care to keep its tracks in reasonably safe condition and free from obstruc-

tion with which trains running under such orders might collide, and if the jury find that the defendant ordered the plaintiff's intestate to run and operate his train in an unusual manner, and in a manner which increased the perils of the plaintiff's intestate by making it more difficult for him to discover and protect himself against possible obstructions upon its track, then the degree of care requisite on the part of the defendant to keep its track free from obstructions was increased, and the plaintiff's intestate had a right to expect and believe that the defendant would discharge its duty in this respect; and if the defendant failed to do so, and such failure caused the collision which resulted in the death of the plaintiff's intestate, then they should find for the plaintiff."

This charge was eminently just and fair to the parties litigant and safeguarded the rights of both. On examination of the entire record we find no error; hence the judgment is affirmed.

Affirmed.