HASKELL et ux. v. COLUMBUS SAVINGS & TRUST CO.

(Circuit Court of Appeals, Eighth Circuit. July 28, 1913.)

No. 3,676.

1. BILLS AND NOTES (§ 517*)—ACTIONS—SUFFICIENCY OF EVIDENCE.
    In an action on a note, evidence held insufficient to authorize a finding that the note was delivered on and subject to a condition.
    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1807–1815; Dec. Dig. § 517.*]

2. BANKS AND BANKING (§ 314*) — DIRECTORS — KNOWLEDGE — IMPUTING TO BANK.
    A trust company with which a stockholder in a corporation negotiated a loan for the purpose of advancing the money to the corporation to assist in paying its debts was not chargeable with knowledge of an agreement between the stockholders that no one should be bound to make such contribution unless all did, merely because the president of the corporation, who acted for the stockholder in negotiating the loan, was also a director of the trust company.
    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 469–473, 478, 483–487, 489, 490; Dec. Dig. § 314.*]

3. TRIAL (§ 139*)—DIRECTED VERDICT—WHEN WARRANTED.
    Where the evidence in favor of plaintiff is so conclusive and so preponderant that the court in the exercise of a sound judicial discretion would be compelled to set aside a verdict for defendants, the court should direct a verdict for plaintiff.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

In Error to the Circuit Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by the Columbus Savings & Trust Company against C. N. Haskell and wife. Judgment for plaintiff, and defendants bring error. Affirmed.

Richard Wm. Stoutz, of Muskogee, Okl. (M. L. Leith, of Muskogee, Okl., on the brief), for plaintiffs in error.

Preston C. West and George S. Ramsey, both of Muskogee, Okl. (Barton Griffith and Cyrus Huling, both of Columbus, Ohio, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. This was a suit instituted by the Columbus Savings & Trust Company against the defendants below, C. N. and Lillie E. Haskell, his wife, to recover a balance due on a promissory note for $18,970 executed by them on May 5, 1904. The note was in renewal of one executed by them in September, 1903. The original note was given in part consideration of an old indebtedness due from them to the trust company and in further consideration of a new loan for some $14,000 made at the time by the trust company to them. The note was absolute on its face and contained a promise to pay absolutely and unconditionally at a fixed time the sum of $18,970 to the plaintiff.

The defense was that the note was executed by defendants and accepted by the trust company on and subject to a condition that all the stockholders of a certain corporation, known as the National Construction Company, in which defendants and others held stock, should advance their pro rata share to the contracting company to enable it to discharge its then pressing indebtedness; that the condition failed in this: That some of its stockholders failed and refused to make their pro rata contribution. It is doubtful if the defense was sufficiently pleaded by the defendants in their answer; but, as the parties in their briefs and argument have so treated it, we shall do likewise.

With the answer setting up this defense, a cross-petition was filed in which defendants sought to recover from the plaintiff an amount of money alleged to have been paid to the plaintiff in excess of the amount due on the note in suit, and in which the defendants also sought to secure a return of certain collateral pledged to the trust company for the payment of the note in suit or in lieu thereof to recover money damages as for a conversion.

The case was tried to a jury. and at the close of all the evidence the Circuit Court, at the request of plaintiff's counsel, instructed the jury to find for the plaintiff. The defendants sued out this writ of error. No assignment of error is predicated upon any action of the court connected with the cross-petition. The chief and only error relied on for reversal is the action of the court in directing a verdict.

[1] We find no evidence directly tending to prove the fact put in issue by defendants that the note was executed and delivered subject to the condition mentioned. There was evidence, however, tending to show the following facts: That, in view of the then embarrassed state of finances of the contracting company, a meeting of its stockholders was called by its president and attended by most of them in

St. Louis, Mo., on the 24th day of August, 1903. At this meeting a plan was devised whereby the stockholders of the company should be invited to make a voluntary contribution of an amount of money proportionate to their respective holdings in the stock of the company and get bonds and stock of certain telephone companies in Texas, which were owned and controlled by the contracting company, for the amount contributed by them. As some of the stockholders were not present at the meeting, it was arranged that the absent ones should be interviewed by certain specified persons by correspondence or otherwise with a view of securing their consent to the plan and learn whether they would join with the others. Mr. Haskell, representing himself and his wife, was present at the meeting and joined with others present in approving of the plan for raising money. He testified, however, that it was understood that no one was to be bound to make the contribution unless the plan was universally agreed to and carried out by all the stockholders of the contracting company. Mr. Haskell then advised the president of the contracting company, Mr. Daugherty, who was also a member of the board of directors of the trust company, that neither he nor his wife had the ready money to pay their share, which amounted to about $14,000. It was then suggested they might be able to borrow it from the trust company, using collateral which the trust company then held belonging to the Haskells as security for the payment of a balance due on an old indebtedness due from them to the trust company, and also the bonds which the Haskells were to receive from the contracting company for their contribution, as collateral for their new note which should embrace the balance of their old indebtedness and an additional sum required to make their contribution.

Mr. Daugherty lived in Columbus and, being a member of the board of directors of the trust company, was a most obvious channel for making application for the desired loan. There is some contradiction in the testimony as to who first suggested borrowing the money from the trust company and as to how or when Daugherty was requested to make application for it and as to other details, and much is made of these things by counsel for defendants in an attempt to show that Daugherty was not the agent of the Haskells in the transaction with the trust company, but these differences are trivial in the light of certain great facts which are not only uncontradicted but which are substantially admitted by counsel for defendants in their brief. These are: That Daugherty did in fact present the application for the loan for and on behalf of the Haskells to the trust company; that it was favorably considered and granted; that the Haskells afterwards executed a note for $19,000, pledging the securities mentioned for its payment, and sent the same to Daugherty at Columbus for delivery, and a disposition of its proceeds was made by Daugherty which was entirely satisfactory to the Haskells. This is evidenced by the report of his doings made by Daugherty in a letter of date September 11, 1903, addressed to C. N. Haskell, who in all these matters acted for himself and his wife, in which, after a detailed account of what he had done with the note and its proceeds, he said:

"If there is anything about this matter that you do not understand or that is not correct, kindly advise me at once."

The record discloses no answer to this inquiry and we may well conclude that Daugherty's acts in the premises were fully approved by Mr. Haskell. In view of these facts and others of like character, we can reach no other conclusion than that Daugherty acted in the matter of negotiating the loan in question solely as the agent of the Haskells.

Conceding now that there was evidence tending to show that the stockholders of the contracting company did have an understanding or agreement, as between themselves, that no one should be bound to make the contribution unless all did it, how is the trust company, which merely loaned money to the Haskells, affected by that understanding or agreement? It was a creditor but not a stockholder of the contracting company. There is no evidence that any of its executive officers ever made any agreement with the Haskells that the note should be void unless all the stockholders of the contracting company made their proportionate contribution. Neither is there any evidence that such executive officers made any such agreement or had any such understanding with Daugherty, Haskell's agent.

[2] But the contention is that, because Daugherty was a member of the board of directors of the trust company, his knowledge of the agreement or understanding between the stockholders of the contracting company is imputable to the trust company, and that that company was in some way obligated at the peril of invalidating its note to see to it that all the stockholders of the contracting company joined in the proposed contribution. These contentions, in our opinion, carry the doctrine of imputable knowledge and its consequences to an unreasonable and unwarrantable length.

But there are other considerations of an unquestionable character and consequence which satisfactorily dispose of the case. Haskell admits in his testimony that very shortly after the St. Louis meeting he knew that all the stockholders had not agreed to make their contributions. Whether he acquired this knowledge before he executed the note of which that in suit is a renewal and before he received his agent's report of the disposition of the proceeds of the discount may be uncertain, but it is certain that he did these things at a time when he must have been uncertain whether all the stockholders had come into the proposed arrangement. He therefore, in prematurely executing the note and borrowing the money to make his own and his wife's contribution, must have assumed the consequences of that uncertainty.

But there are other facts: On November 17, 1903, the defendants authorized the trust company to exchange certain 6 per cent. bonds of the Williamson County and Bell County Telephone Companies, which had been pledged as collateral security for the payment of the $19,000 note given in September, 1903, for a like amount of 5 per cent. bonds of a new issue by the same telephone companies; on May 5, 1904, the defendants paid the accrued interest on the note and renewed the same for $18,970, pledging the collateral originally given with the exception of the Williamson County and Bell County Telephone Companies bonds, which had been exchanged; on November 7, 1904, the defendants authorized the trust company to sell 45 certain railroad bonds which, among other things, had been pledged as collateral security for the note sued on and to apply their proceeds to

the payment, so far as they would go, of that note. This was done and a credit for $7,193 was given to the defendants on the note.

On March 2, 1905, the defendants tendered to the trust company the full amount then remaining unpaid on the note in suit and demanded the surrender of the note and of all the collateral held by the trust company to secure its payment, subject, however, to the condition that the trust company should surrender the 6 per cent. bonds of the Williamson County and Bell County Telephone Companies instead of the 5 per cent. bonds of those companies which, with the consent of the Haskells, had before then been substituted for the 6 per cent. bonds and which the company then held; later, on April 8, 1905, the Haskells, in the name of the defendant Lillie E. Haskell, instituted a suit in the court of common pleas of Franklin county, Ohio, affirming the execution and delivery of the note in question and of the tender of its payment on March 2d and demanded a surrender of the note and of the collateral held by the trust company. In their petition in that case the plaintiffs allege that they have been at all times ready and willing to pay the amount due on the note upon the surrender of the note and of the collateral security remaining in the hands of the trust company. Bearing in mind what has already been stated, that the Haskells had on November 17, 1903, authorized the trust company to exchange the 6 per cent. bonds of the Williamson County and Bell County Telephone Companies for 5 per cent. bonds of the same companies, and that the trust company had accordingly made the exchange, the tender, in so far as it was conditioned upon the surrender of the 6 per cent. bonds instead of the 5 per cent. bonds seems not to have been made in good faith. In none of these acts or in the negotiations leading up to them do we find any pretension that the note was invalid by reason of any condition on which it was given being broken. · On the contrary, there is in some of the acts mentioned, if not in all of them, a distinct, unequivocal, and necessary affirmation of the existence and validity of the note and of a willingness to pay it.

In the Ohio suit there was a formal and solemn admission of record in a court of justice of the same thing. In view of this substantial and uncontradicted testimony, even if a possible inference could have been drawn from Daugherty's relation to the trust company that the latter company knew what had been agreed upon at the stockholders' meeting of the contracting company, can it be possible that any intelligent or reasonable jury could have found for the defendants on the vital and controlling issue of the case? We think not.

[3] The unconditional promise to pay found in the body of the note itself, the want of any direct evidence substantiating the alleged conditional execution and delivery of the note, the vague and improbable inferences which alone are claimed to establish it, taken in connection with the several serious, important, and solemn admissions and acts of affirmation of the validity of the note by the defendants, make the evidence in favor of the plaintiff of such conclusive character and so preponderant that the court in the exercise of a sound judicial discretion would have been compelled to set aside a verdict, if any had been rendered for the defendants. Such being the case, it was clearly

the duty of the court to instruct a verdict in favor of the plaintiff. Hart, Adm'r, v. Northern Pacific Ry. Co., 116 C. C. A. 12, 196 Fed. 180; Improvement Company v. Munson, 14 Wall. 442, 20 L. Ed. 867; Southern Pacific Co. v. Pool, 160 U. S. 438, 16 Sup. Ct. 338, 40 L. Ed. 485.

A strong argument is made that the judgment rendered in favor of the defendant in the Ohio suit is res adjudicata of the present controversy; but, in view of the satisfactory disposition of the case on the merits, it is unnecessary to consider or pass on this contention. There are some assignments of error challenging the action of the court in admitting and excluding evidence, but they were not deemed important enough to be argued by plaintiffs in error, and we fail to find anything in them of a prejudicial character.

Finding no error in the proceedings below, the judgment is affirmed.