## IMPROVEMENT COMPANY *v.* MUNSON.

1. By the settled land laws of Pennsylvania no title can exist under a second survey, unless such second survey have been ordered by the board of property.

2. The mere fact that a second survey was made is not evidence, even after a long time, as against another confessedly first, that an order for the second was made by the board of property, and that the order has been lost. And although the loss of such an order may be presumed after a lapse of time, yet the presumption can be made only where the order is shown by some kind of competent proof to have once existed.

3. Where a charge is merely ambiguous, a party dissatisfied with it ought, before the jury leave the bar, to ask the court to make it clear. He should not acquiesce in the correctness of the instruction, take his chance with a jury, and after the verdict is against him, claim the benefit of the ambiguity on error.

IN error to the Circuit Court for the Eastern District of Pennsylvania; in which court, Munson and others brought ejectment against The Schuylkill and Dauphin Improvement Company and two other like companies, all corporations of Pennsylvania, to recover certain valuable lands in the State just named. Judgment having gone for the plaintiffs, the companies brought the case here.

*Mr. N. H. Sharpless, for the plaintiff in error; Messrs. G. W. Woodward, F. B. Gowen, and J. E. Gowen, contra.*

Mr. Justice CLIFFORD stated the case, and delivered the opinion of the court.

Rules of decision in the courts of the United States, as well as the forms and modes of process, are very largely derived from the laws of the States as construed by the decisions of the State courts, in cases where they apply, except where the Constitution, treaties, or statutes of the United States otherwise require or provide.

Controversy having arisen between the parties in respect to the title to the tract of land described in the record, the

plaintiffs, on the sixth of February, 1866, brought an action of ejectment against the three corporation defendants and the other defendants therein named, to recover the possession of the tract, alleging that the title to the tract and the right of possession were in them and not in the defendants. Service was duly made and the defendants appeared and pleaded that they were not guilty as alleged in the declaration. Issue was joined upon that plea and the parties went to trial, and the verdict and judgment were for the plaintiffs. Exceptions were duly taken by the defendants, and they sued out a writ of error and removed the cause into this court.

Title to the premises in controversy is deraigned by the plaintiffs from one Benjamin Bonawitz, whose claim to the same is supposed to be established by the following documentary evidences of title, as more fully set forth in the bill of exceptions: (1.) An application to the land office of the State, dated December 14th, 1829, made by him for sixty-six acres of unimproved land in Lower Mahantongo Township, Schuylkill County, bounded as therein described. (2.) Warrant from the State, of the same date, to the applicant for the land described in the application, as fully set forth in the record. (3.) Return of survey made by a deputy surveyor of the county, June 1st, 1829, in pursuance of the warrant, as duly returned to the land office, and accepted the fifth of March of the succeeding year, as follows, to wit: Situate in Lower Mahantongo Township, Schuylkill County, containing sixty-six acres and one hundred and three perches, and allowance of six per cent., returned this third day of March, 1830, in pursuance of a warrant dated the 14th of December, 1829, to Benjamin Bonawitz. Superadded to the return is the following statement, that the lines and corners of the survey were made on the eighteenth of June, 1829, in pursuance of a warrant dated the seventeenth of March of that year, granted to the same person, a return on which was made, but was rejected on account of the survey not answering the description of the warrant. (4.) Sundry *mesne* conveyances from the warrantee and sub-

sequent grantees of the land described in the warrant, to the plaintiffs.

Appended to the statement that those conveyances were introduced is the admission of the counsel for the defendants that Schuylkill County was erected out of Berks County, and that Porter Township, where the premises are situated, as alleged in the declaration, was created out of Lower Mahantongo Township, which is the name of the township where the location was made under the warrant, survey, and return.

Documentary evidences of title were then introduced by the defendants to maintain the issue on their part, as follows: (1.) An application, dated July 1st, 1793, made by Jacob Yeager to the land office for four hundred acres of land adjoining land granted the same day to William Witman, Jr., in the county of Berks. (2.) Warrant from the State, dated July 1st, 1793, to Jacob Yeager for the same land, as more fully set forth in the bill of exceptions. (3.) Return of survey on the warrant by the deputy surveyor of Berks County, on the tenth of July, 1794, of four hundred and forty acres and sixty-four perches of land and allowance, situate in Pinegrove Township, in the county of Berks, returned and accepted August 26th, 1794, as therein ce tified. (4.) Sundry conveyances were also offered in evidence by the defendants, tending, as they contend, to deduce title to the said corporations, or one of them, to the land located and surveyed under the warrant to Jacob Yeager, which includes the land embraced in the warrant and survey under which the plaintiffs deraign their title.

Rebutting evidence was then introduced by the plaintiffs: (1.) Certified copies of eighteen applications, dated July 1st, 1793, to the land office, for four hundred acres each, the leading one being in the name of James Silliman, and one of the number being the application by Jacob Yeager given in evidence by the defendants, as follows: Jacob Yeager applies for four hundred acres of land adjoining land this day granted to William Witman, Jr., in the county of Berks. (2.) Certified copies of eighteen descriptive warrants, issued

upon those applications, including the warrant given to Jacob Yeager, introduced in evidence by the other party. (3.) Also certified copies of eighteen surveys, including the Jacob Yeager tract, made by a deputy surveyor of Berks County, upon those warrants, corresponding with the descriptions set forth in the warrants, the certificate of the survey in question being fully set forth in the bill of exceptions. (4.) Return and acceptance of those eighteen surveys, made by Henry Vanderslice, July 16th, 1793, as appears in the list annexed to the return. They also introduced a certified copy of a caveat, entered July 18th, 1793, by John Kunckle and Aaron Bowen against granting the tracts either to the said Jacob Yeager or to any one of the other seventeen applicants under the warrants included in that list. (5.) Certificate from the office of the surveyor-general that no proceedings had ever been had upon the said caveat.

By that certificate it appears that diligent and careful search had been made in that department for proceedings on that caveat, and the proper officer certifies that he does not find that any citation was ever applied for, or that any proceedings or action was ever had by the board of property upon or concerning the same, which remains recorded in the office of the surveyor-general. (6.) They also offered in evidence a map, showing the two locations of the Jacob Yeager tract, the first by Henry Vanderslice, and the second by William Wheeler, both deputy surveyors of Berks County. (7.) Both sides admitted that Henry Vanderslice was a deputy surveyor of Berks County, and that the location of the Jacob Yeager tract as made by him was made in the county of Northumberland, within one mile of the line between that county and Berks County, and that the second location of the warrant by William Wheeler was made in Berks County, about twenty-two miles distant from the survey made by the other deputy surveyor.

Responsive to the rebutting evidence given by the plaintiffs the defendants then introduced certified copies of returns of surveys made by William Wheeler, July 10th, 1794, upon the Jacob Yeager warrant, and upon three others of the

eighteen warrants returned and accepted, August 26th of that year, together with a connected chart of the four tracts, as prepared from the original surveys on file in the office of the surveyor-general.

Neither party desiring to offer any further evidence, the presiding justice proceeded to charge the jury. Speaking of the warrant and survey introduced by the plaintiffs, he told the jury that the court saw no defect in the plaintiffs' title under that warrant and survey, adding that the only claim which the defendants have set up is under warrants located several miles from the land in controversy by surveys returned and accepted, and to that instruction no exception was taken by the defendants. But the court also told the jury that "no subsequent official survey of the land under those warrants, without a warrant of survey or order of the board of property, was authorized." Therefore, said the justice, if the jury take the same view of the evidence as the court, the verdict should be for the plaintiffs, and the jury followed that instruction, and the defendants excepted.

Two errors are assigned, as follows: (1.) That the court erred in charging the jury that no subsequent official survey of the land under those warrants, without a warrant of survey or order of the board of property, was authorized. (2.) That the court erred in telling the jury that if they took the same view of the evidence as the court the verdict should be for the plaintiffs, as the effect of the instruction, as the defendants contend, was to withdraw from the jury the consideration of the question whether or not the board of property might not have issued an order for a second survey of the tract, the evidence of which had been lost.

Much discussion of the first error assigned is unnecessary, as the defendants admit that the law is well settled in that State that a warrant, where it appears that a survey has been ordered upon it and made, returned, and accepted, is *functus officio*, and that no title under a second survey can be made unless such second survey was ordered by the board of property, which it is admitted is not directly proved in this case.

Such an admission by the defendants is a very proper one, as the decisions of the State court which furnish the rule of decision for this court in this case are very numerous and decisive to that effect.   Perhaps the leading case upon the subject is that of *Deal* v. *McCormick*,* in which Gibson, J., said, "The law is well settled that after a survey made and returned into office, a second survey without an order of the board of property is merely void." If the owner of a warrant be prejudiced by the fraud or mistake of the officer, the board of property, which is a board created by statute, will grant him relief, if no new right has attached itself to the land, but a new survey, even pursuant to an order of the board, will not affect an intervening claim.†

Doubtless the official surveyor may correct his survey while the warrant remains in his hands, but his control over it ceases after his return has been made to the land office, and the decisions are direct that no second survey thereon without an order for that purpose is of any validity whatever, either against the State or any other claimant, or, as Justice Strong said, in the case of *Hughes* v. *Stevens* :‡ A second survey without an order for it amounts to nothing, as it is merely an unofficial act, which cannot give the warrantee any rights either against the State or any other claimant of the tract.§

2. Whether the Circuit Court erred, as alleged in the second assignment of errors, depends upon the disputed fact whether there was any evidence in the case which would have warranted the jury in finding that an order for a second survey was ever granted by the board of property, as it is settled law that it is error to submit a question to a jury in a case where there is no evidence upon the subject.

It is clearly error in a court, said Taney, C. J., in *United States* v. *Breitling*,‖ to charge a jury upon a supposed or con-

---

* 3 Sergeant & Rawle, 346.

† Purdon's Digest, 9th ed., 619, pls. 7 and 8.      ‡ 7 Wright, 197.

§ Drinker *v.* Holliday, 2 Yeates, 89; Porter *v.* Ferguson, 3 Id. 60; Vickroy *v.* Skelley, 14 Sergeant & Rawle, 377; Oyster *v.* Bellas, 2 Watts, 397; Bellas *v.* Cleaver, 4 Wright, 260; Gratz *v.* Beates, 9 Wright, 495.

‖ 20 Howard, 254.

jectural state of facts, of which no evidence has been offered, as such an instruction presupposes that there is some evidence before the jury which they may think sufficient to establish the fact hypothetically assumed in the charge of the court, and if there be no evidence which they have a right to consider, then the charge does not aid them in coming to a correct conclusion, but its tendency is to embarrass and mislead them in their deliberations.*   When a prayer for instruction is presented to the court and there is no evidence in the case to support such a theory it ought always to be denied, and if it is given, under such circumstances, it is error; for the tendency may be and often is to mislead the jury by withdrawing their attention from the legitimate points of inquiry involved in the issue.   Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party.†   Formerly it was held that if there was what is called a *scintilla* of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.‡

Very strong doubts are entertained whether the construction, of the language employed by the judge, assumed by the defendants, is the correct construction of the same, and

* Goodman *v.* Simonds, 20 Id. 359; Dubois *v.* Lord, 5 Watts, 49; Haines *v.* Stouffer, 10 Barr, 363.

† Ryder *v.* Wombwell, Law Reports, 4 Exchequer, 39; Law Reports, 2 Privy Council Appeals, 335.

‡ Jewell *v.* Parr, 13 C. B. 916; Toomey *v.* L. & B. Railway Co., 3 C. B., N. S. 150; Wheelton *v.* Hardisty, 8 Ellis & Blackburn, 266; Schuchardt *v.* Allens, 1 Wallace, 369.

the settled rule is if the charge is merely ambiguous the party dissatisfied with it should have requested to have it made clear before the jury left the bar; that a party under such circumstances may not acquiesce in the correctness of the instruction by his silence and take his chance with the jury, and then be allowed, if the verdict is against him, to claim the benefit of the ambiguity without having invited attention to the subject and given the court an opportunity to have made the correction to the jury. Much weight is certainly due to the suggestions of the plaintiffs, that the judge did not withdraw the evidence from the jury, if any there was in the case, that the language only warrants the conclusion that he expressed his own opinion, as he had a right to do, if he thought it proper, and left the question to the determination of the jury. Assume that to be the true construction of the language employed, and it is quite clear that the exception cannot be sustained, but the court is not inclined to place the decision upon that ground, as it is even clearer that there was no evidence in the case which would have warranted the jury in finding that an order for a new survey was ever granted by the board of property, as required by law and the repeated decisions of the Supreme Court of the State.

Lost instruments may be proved by parol testimony where it is shown that the instrument once existed and is lost, and the proof of loss, where it is first shown that it once existed, may consist of evidence showing diligent and unsuccessful search and inquiry in the place where it was usually kept or in which it was most likely to be found, if the nature of the case admitted of such proof.* Presumptions of law are frequently absolute and conclusive, as they determine the quantity of evidence requisite for the support of any particular averment, which is not permitted to be overcome by any proof that the fact is otherwise. Such presumptions arise in respect to the intermediate proceedings in cases where lands are sold under licenses granted by courts to executors, ad-

---

\* 1 Greenleaf on Evidence, 2d ed., § 558.

ministrators, guardians, and other officers, where they are required to advertise the sales in a particular manner, and to observe other formalities in their proceedings.   Lapse of time, usually for the period of thirty years, affords a conclusive presumption in such cases, if the license and the official character of the party and the deed of conveyance are proved, that all the intermediate proceedings were correct.   Were it otherwise great uncertainty of titles, and other public mischiefs, would ensue, but the rule that lapse of time accompanied by the acquiescence of parties adversely interested does not in general extend to records and public documents which are supposed always to remain in the custody of officers charged with their preservation, and which, therefore, must be proved or their loss accounted for by secondary evidence.*

Surveys, it seems, were sometimes made in that State by deputy surveyors in early times without going upon the land, by plotting the chart and marking the lines and corners in their offices, and those surveys are called "chamber surveys," but such surveys were forbidden by the act of the State legislature of the eighth of April, 1785, which enacts that every survey hereafter to be returned into the land office upon any warrant issued after the passing of the act shall be made by actually going upon the land and measuring the same and marking the lines.†   Decided cases are referred to by the defendants where it is held that in controversies respecting titles under those surveys there arises a conclusive presumption, after the lapse of twenty-one years from the return of the survey into the land office, that the survey was regularly made upon the ground as returned and required by law.‡   Evidently the cases referred to must be regarded as establishing a rule of property in that State,

---

* 1 Greenleaf on Evidence, 12th ed., § 20; Hathaway *v.* Clark, 5 Pickering, 490; Brunswick *v.* McKean, 4 Greenleaf, 508.

† Purdon's Digest, 9th ed., pl. 65.

‡ Mock *v.* Astley, 13 Sergeant & Rawle, 382; Caul *v.* Spring, 2 Watts, 390; Norris *v.* Hamilton, 7 Watts, 91; Nieman *v.* Ward, 1 Watts & Sergeant, 68; Ormsby *v.* Ihmsen, 10 Casey, 462.

but the court here is of the opinion that they are not applicable in this case, as the defect in the defendants' title arises from the fact that the new survey was made without any order to that effect ever having been granted by the board of property as required by law. Surveys made under those circumstances are simply void, as shown by the best considered cases upon the subject decided by the highest court of the State.*

Attempt is made in this case to supply by presumption a matter absolutely necessary to give legality to the survey and without which it is a nullity and amounts to nothing, but is held to be as worthless as if there had never been any warrant at all. Viewed in that light, as it must be, it is clear that the case falls within the decision of the court in the case of *Wilson v. Stoner*,† which, indeed, is decisive of the controversy. It was there decided that a survey is not evidence without first showing an authority to make it, or proving that such authority existed and was afterwards lost. Possession in that case was proved for upwards of thirty years under a survey in the handwriting of an assistant deputy surveyor, indorsed " copied for return," with a memorandum by him that there was authority to make it, but the court held that those circumstances could not be received as affording presumptive evidence from which the jury might draw the necessary conclusion, as matter of fact, that even if the existence of the location was admitted, some account of its loss would have to be given before secondary evidence of its contents could be received, as without that the survey would be inadmissible for want of a previous authority. Unless it can be shown that the rule laid down in that case is not good law, it is quite clear that the second error assigned must also be overruled, as the defendants did not prove possession for any considerable time, or occupation of the premises, nor the making of any improvements upon the same,

---

* Deal *v.* McCormick, 3 Sergeant & Rawle, 346; Oyster *v.* Bellas, 2 Watts, 397; Cassiday *v.* Conway, 1 Casey, 240; Hughes *v.* Stevens, 7 Wright, 197.

† 9 Sergeant & Rawle, 39.

nor the payment of any taxes assessed upon the land. On the contrary, they proved nothing except the mere lapse of time, unaccompanied by evidence of possession, or of improvements, or the payment of taxes, or any other circumstance, as a ground of presumption to warrant the jury in finding that the board of property ever granted a new warrant of survey or made any order of a character to give legality to the title set up in their behalf, which is all that need be remarked to show that there is no error in the record. Unquestionably lost records may be proved by secondary evidence; but their former existence and loss must first be established by competent proof, and it is clear that evidence merely showing that they do not exist is not sufficient to establish either of those requirements.

JUDGMENT AFFIRMED.

Mr. Justice STRONG having been of counsel for one of the parties did not sit.