Jesse HILL, Plaintiff,

v.

Harold JENKINS, Andrew L. Rodez and the Village of Maywood, Defendants.

No. 83 C 3533.

United States District Court, N.D. Illinois, E.D.

Sept. 18, 1985.

Ruth Van Demark, c/o Wildman, Harrold, Allen & Dixon, Chicago, Ill., for plaintiff.

John B. Murphey and Ronald Cope and Cary Schwimmer, Ancel, Glink, Diamond, Murphy & Cope, P.C., Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

The Court's last encounter with this case was on Defendants', Harold Jenkins ("JENKINS"), Andrew Rodez ("RODEZ") and the Village of Maywood ("VILLAGE"), Rule 12(b)(6) motion to dismiss. That motion was granted in part and denied in part; the fourth and fourteenth amendment claims remain. All Defendants now move for summary judgment.

Federal Rule 56(c) provides for the entry of summary judgment if the record on the motion reveals "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An opponent of a properly supported Rule 56 motion must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). *See also* Local Rule 12(f). The opponent of the motion receives the benefit of all reasonable doubts and inferences arising from the underlying facts. *See generally* Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2727. Only reasonable inferences favoring the opponent of the motion, however, will be considered by the Court. *Hermes v. Hein*, 742 F.2d 350, 353 (CA 7 1984). In other words, the Court need not displace logic or disregard inferences which unavoidably follow from the established facts. With this understanding, the Court now turns to the facts established in the present case.

In an ideal world the perpetrators of crime would have the good sense to throw in the towel when the game is up and the odds are against them. But this is not an ideal world and this case bears out that observation. On August 11, 1982 the Plaintiff, Jesse Hill ("HILL"), robbed the T.P. Food Store in Maywood, Illinois. Vright Hardy and two other men aided Hill in the criminal venture. Before, during and after the robbery Hill was armed with two (maybe three) pistols. One pistol was fired during the robbery. The shot hit no one, but it could have. The proceeds from the robbery were small (some cash, some coin). As Hill left the store his wardrobe included two guns; one secured in a shoulder holster under his arm and another held in his hand.

Defendant Jenkins is a Maywood Policeman. He was off duty at the time of the T.P. Foods robbery. Jenkins and his young son were enjoying a drive in Jenkins' red Trans-Am when a dispatch came over the police radio installed in the car. The dispatch informed listeners that a burglar alarm had been activated at T.P. Foods, 1019 West Madison Street, Maywood, Illinois. Deft's Ex D at 1. Jenkins heard the dispatch and proceeded to T.P. Foods.

When he arrived at the scene, Jenkins heard a shot. He saw an on-duty Maywood police car proceeding to the store and Vright Hardy "nervously" walking out. Jenkins observed Hardy carried a brown paper bag. He then saw Hill run from the store's entrance. Jenkins states Hill was carrying two guns, but Hill contends Jenkins could not have seen the guns because they were concealed. Hill does not mention the gun he tucked in the front of his trousers after coming out of the store.

After Hill and Hardy saw the Maywood squad car they decided to escape. They began running and were pursued, on foot, by a uniformed Maywood policeman. Jenkins followed the three in his red car. After some dodging in and out of front yards, Hardy crossed in front of Jenkins and was struck by the red car. Hardy fell and became pinned under the car's front bumper. Hill Dep at 123–24. Hardy was able to get up. He ran to Hill, who was now looking toward Hardy and the red car. The two began to run together when Hardy reached where Hill was standing. At this point Hill states he heard three shots

and felt a burning sensation in his right leg. Hill Dep at 127. According to Hill one minute (or a bit more) had elapsed from the time he came out of the T.P. Food Store and was seen by Jenkins. Hill Dep at 126.

At the time Hill recalls being shot he states he was carrying only one gun. *Id.* at 131. That gun was in a shoulder holster under his jacket. *Id.* Hill says he then fell to the ground and groped for the gun in his shoulder holster. *Id.* at 132. Jenkins walked up to the prone Hill, held a gun on him and told him to freeze. *Id.* at 134. Jenkins then removed the gun from Hill's shoulder holster, (*id.* at 135.) and retrieved another gun and a green bag from the grass near Hill. *Id.* at 137.

From his position on the grass Hill saw Jenkins walk across to the spot where Hardy had been hit and retrieve another gun and another bag. *Id.* Hill maintains the two guns retrieved by Jenkins (the one found on the lawn and the one found on the street) belonged to Hardy. *Id.* at 138. But Hill does admit picking up a second pistol as he left the food store and tucking it in the waistband of his trousers *outside* the store. *Id.* at 109–11. Hill specifically remembers tucking the gun directly in the center of his waistband *after he exited the store.* *Id.* at 11. Hill claims he later handed off the same pistol to Hardy and therefore could not have had it in his possession when he was shot by Jenkins. *Id.* at 115–16.

Off-duty Officer Jenkins relates a slightly different version of the shooting. *See* Jenkins' Affidavit, Deft's Ex D. Jenkins says he saw Hardy come out of the store first. Then Hill appeared. According to Jenkins, Hill carried two guns as he came out of the store: one gun (a nickel plated revolver) was in Hill's right hand; the location of the other gun is not mentioned. *Id.* at 2. This "two gun" version is not altogether inconsistent with Hill's version of the facts. For example, it is unlikely Jenkins saw the gun Hill insists was in the shoulder holster, but it is not contested that Jenkins saw the nickel plated gun Hill

admits he carried out of the store in his right hand and later tucked in his trousers.

In any case, as Hill came out of the store Jenkins heard someone yell, "there they go!" Jenkins then gave chase to the fleeing Hill and Hardy. *Id.* at 2. While driving, Jenkins heard from his police radio that "T.P. Foods has been robbed." *Id.* Jenkins does not elaborate on the radio message.

After some chasing, Jenkins relates that Hill turned and "pointed a nickel plated revolver at me." *Id.* at 3. Jenkins then fired at Hill. Hill began to run, dropped a green bag and the nickel plated gun and then fell some 20 to 30 feet from where he had been shot. *Id.* These final events took place in or near the front yard located at 1201 South 12th Avenue. *Id.*

Cheryl Hudson resides at 1224 South 12th Avenue. Hudson Affidavit, Deft's Ex E at 1. That address is across the street from 1201 South 12th Avenue; the location where Hill was shot by Jenkins. At the time of the shooting, Hudson was sitting by a window which overlooked 12th Avenue. *Id.* Through the window Hudson saw a man running north on 12th Avenue; he carried a bag in one hand and "an object in his other hand." Id. As she watched the man run, Hudson heard someone yell "stop" or "halt." *Id.* Hudson turned away from the window and again heard someone yell "stop" or "halt." Shortly thereafter she heard four or five gunshots. She returned to the window to see the man she had previously seen running now lying in the front yard at 1201 South 12th Avenue. She observed a gun "lying next to [the man's] hand." *Id.* at 2.

Defendants insist a recent Supreme Court decision governs this case. *See Tennessee v. Garner,* —— U.S. ——, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). *Garner* involved the fatal shooting of a fifteen year old burglary suspect by an officer responding to a night-time report of a burglary. The issue before the Court involved the "constitutionality of the use of deadly force to prevent the escape of an apparently un-

armed suspected felon." 105 S.Ct. at 1697. Specifically at issue was the constitutionality of a statute which allowed the use of all necessary means to effect an arrest (including deadly force) "if, after notice of the intention to arrest the defendant, he either flees or forcibly resists." *See* 105 S.Ct. at 1698. The Court found the statute unconstitutional insofar as it authorized the use of deadly force to apprehend an "unarmed, nondangerous" fleeing suspect. *Id.* at 1701. Thus, the Court held deadly force may not be used "unless it is necessary to prevent ... escape *and* the officer has probable cause to believe that the suspect poses a significant threat of death or serious injury to the officer or others." 105 S.Ct. at 1697 (emphasis added).

■ Further into its opinion, the majority attempted to define the limits of the constitutional use of deadly force. The Court expanded on its holding and specifically noted that it is not constitutionally unreasonable for a police officer to prevent a suspect's escape by using deadly force when the "officer has probable cause to believe ... the suspect poses a threat of serious physical harm ... to the officer or others. 105 S.Ct. at 1701. Consequently, when a suspect threatens an officer with a weapon or the officer has probable cause to believe the suspect "has committed a crime involving the infliction or threatened infliction of serious physical harm, [then] deadly force may be used to prevent escape, and if, where feasible, some warning has been given." *Id.* Under *Garner*, therefore, either a threat with a gun or a determination of probable cause can support the use of deadly force. More specifically, Jenkins' use of deadly force (firing his weapon at Hill) was not a violation of Hill's fourth and fourteenth amendment rights if

(1)(a) Hill threatened Jenkins with a gun, or

(b) Jenkins had probable cause to believe Hill committed a crime involving the infliction or threatened infliction of serious physical harm, and

(2) if feasible, Hill was given some kind of warning.

This is not a new formulation of a deadly force standard (*see Garner v. Memphis Police Department*, 710 F.2d 240, 247, (CA6 1983); *Taylor v. Collins*, 574 F.Supp. 1554, 1561–62 (E.D.Mich.1983); American Law Institute, *Model Penal Code* § 3.07(2)(b) (Proposed Official Draft 1962), but it is the first time the Supreme Court has adopted this formulation as a constitutional minimum which displaces the traditional common-law rule. *See* 105 S.Ct. 1703–1704 & nn. 14–21.

## THE THREAT THEORY

■ For the purposes of this motion it cannot be taken as an established fact that Hill threatened Jenkins with a gun before Jenkins shot Hill. It is true that Jenkins claims Hill turned and pointed a nickel plated revolver at him. Jenkins Dep at 3, Deft's Ex D. But Hill swears to the opposite; he claims he had no gun in his hand when the shooting occurred. Whether there was a threat by Hill is a contested material fact. And the presence of that genuine issue of material fact precludes the entry of summary judgment in favor of Defendants on a threat theory. Resolution of that issue, however, does not dispose of Defendants' motion. Defendants argue that this case falls within the probable cause rule announced in *Garner*.

## THE PROBABLE CAUSE THEORY

■ The gist of the probable cause rule is that an officer's use of deadly force does not violate the fourth amendment if the officer had probable cause to believe the suspect had committed a crime involving the threat or actual infliction of serious physical harm. 105 S.Ct. at 1701. Analysis under the rule initially requires a determination of probable cause. Since *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), probable cause has become a common sense determination based on the totality of the circumstances. *United States v. Streich*, 759 F.2d 579, 586 (CA7 1985). Moreover, the determination of probable cause is a matter of probability, not certainty. *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302,

1310, 93 L.Ed. 1879 (1948). Even though it is a flexible concept, the determination of probable cause in this case must be limited to the facts available to Officer Jenkins at the time of the shooting incident. *See United States v. Simon*, 409 F.2d 474, 475 (CA7 1969). Based on an examination of the undisputed facts in this case the Court finds Officer Jenkins had probable cause to believe Hill had committed a crime involving the threat and actual infliction of serious bodily harm. Consequently, Defendants' motion for summary judgment must be granted.

The following undisputed facts provide the basis for probable cause in this case. Jenkins became aware of the T.P. Foods robbery from a police radio message. After he arrived Jenkins heard a shot from inside the store. Hill admits firing a shot inside the store and does not dispute that Jenkins heard the shot. Similarly, Hill does not dispute Jenkins' statement that he saw Hill carrying a gun in his hand as Hill came out of the T.P. Food Store. *See* Jenkins Dep, Deft's Ex D at 4. Hill in fact admits to carrying the gun in his hand as he left the store. Hill Dep at 76. In sum, then Jenkins heard the police call describing a robbery in progress at a food store, he arrived at the scene and heard a gunshot. He also saw a man (Hill) walk out of the store with a gun in his hand. These facts were sufficient to provide Jenkins with probable cause that Hill had committed a crime involving the threat and infliction of serious bodily harm. But there is more.

Before the shooting, Jenkins saw Hardy run from the food store. Hardy looked nervous. Hill quickly followed on Hardy's heels. Both ran from the store and were chased by a uniformed Maywood policeman. While he participated in the chase Jenkins saw both Hardy and Hill carrying bags. These facts were sufficient to give Jenkins probable cause to believe Hill and Hardy were the perpetrators of the T.P. Foods robbery. Cheryl Hudson's affidavit corroborates much of Jenkins' version of the facts and establishes the sequence of the shooting incident: two shouts of "stop" or "halt" followed by four or five gunshots shortly thereafter. Hudson Affidavit, Deft's Ex E at 1.

Hill contends Jenkins' failure to warn him generates a genuine issue in this case. *Garner* requires only that "some" warning be given before deadly force is used. 105 S.Ct. at 1701. Hill has introduced no evidence to contradict Cheryl Hudson's statement that "some" warning was given in this case. Thus, Hill's argument regarding the feasibility of a warning by Jenkins is negated by the fact that Hill actually received "some" warning. The Court does not believe *Garner* requires more than that.

Moreover, Hill's argument would fail even if *Garner* could be read as requiring more of a warning than was given in this case. The *Garner* Court specifically noted that a warning before the use of deadly force need only be given "where feasible." 105 S.Ct. 1701. Given the particular facts in this case and the very brief amount of time over which the entire incident took place, the Court finds no additional warning was feasible.

Next, Hill argues summary judgment is inappropriate because Jenkins had no articulable basis to believe Hill was armed at the time of the shooting. Hill misses the point. There is ample evidence in this case to support a finding that Jenkins had probable cause to believe Hill had committed a crime involving the threat and actual infliction of serious physical harm. This finding is based in part on four undisputed facts: 1) The police radio dispatch which allerted listeners to a robbery in progress at T.P. Foods; 2) Jenkins' statement that he heard a shot from inside the food store shortly after he arrived at the scene; 3) Hill's admission that he carried a gun in his hand when he walked out of the store and into the street; and 4) Jenkins' statement that he saw the gun in Hill's hand as Hill came out of the food store. Hill does not argue that Jenkins saw Hill hand off the gun to Hardy. Thus Jenkins was entitled to the reasonable inference that Hill retained the

gun, but concealed it on his person. To do otherwise would require a police officer at the scene of a crime to trust that an armed fleeing felon will not use a gun which the officer has every reason to believe the felon still possesses. Thus under these facts, without some affirmative action on Hill's behalf which showed that he was unarmed, once having seen Hill with a gun in his hand, Jenkins was entitled to continue in his belief that Hill was armed and dangerous. Defendant's motion for summary judgment is granted.

IT IS SO ORDERED.