**Larry FORD, Plaintiff,**

v.

**David CHILDERS, individually and in his official capacity as a police officer with the Taylorville Police Department; Roger Jones, individually and in his official capacity as Chief of Police of the Taylorville Police Department; and City of Taylorville, Illinois, a municipal corporation, Defendants.**

No. 84–3378.

United States District Court,
C.D. Illinois,
Springfield Division.

Dec. 22, 1986.

George F. Taseff, St. Louis, Mo., Michael S. Baird, Chicago, Ill., for plaintiff.

Frederick P. Velde, Patrick Londrigan, Springfield, Ill., for defendants.

## OPINION ORDER

MILLS, District Judge:

Ford robbed a bank.

He was shot while fleeing from the scene.

Can he now sue the officer who shot him for violating his civil rights?

Of course not!

Larry Ford brought this lawsuit—under the pretext of 42 U.S.C. § 1983—alleging a deprivation of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

Specifically, he claimed that Police Officer David Childers utilized excessive and unreasonable force by shooting him in the back, and thus averting his flight from the scene of an armed bank robbery—a crime to which Ford pled guilty and was sentenced to 7 years. Plaintiff further maintained the City of Taylorville and its Police Chief, Roger Jones, failed to properly train and supervise the officer, thereby denying the felon constitutional guarantees.

At the close of the Plaintiff's case-in-chief, Defendants moved for a directed verdict pursuant to Fed.R.Civ.P. 50(a). They maintained Officer Childers had complied not only with the Illinois deadly force statute, Ill.Rev.Stat. ch. 38, ¶ 7–5 (1985), but also with the constitutional guidelines for the use of such force set out in *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Following oral argument outside the presence of the jury, the Court allowed the motion and discharged the jury as the trier of fact.

Plaintiff now moves for a new trial under Fed.R.Civ.P. 59, asserting the directed verdict was improperly entered.

### Directed Verdict Standard

In ruling upon a motion for a directed verdict, the Court must determine whether "reasonable minds could differ as to the import of the evidence." *Anderson v. Liberty Lobby, Inc.*, — U.S. —, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Unquestionably, the Court must view the facts and all inferences in the light most favorable to the nonmoving party. *Mathews v. Fairman*, 779 F.2d 409, 415 (7th Cir.1985). Nevertheless, the rule is also well established that the party opposing the motion must produce more than a scin-

tilla of proof to support his claim. *Id.* Thus, the "preliminary question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Anderson,* 106 S.Ct. at 2511, *quoting Improvement Co. v. Munson,* 14 Wall. 442, 448, 81 U.S. 442, 448, 20 L.Ed. 867 (1872). In other words, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.,* 106 S.Ct. at 2512.

Applying this standard, the Court finds the following.

### Facts

On January 13, 1984, at approximately 7:00 p.m. Officer Childers responded to a radio dispatch reporting a robbery in progress at the First National Bank of Taylorville. Upon arriving at the scene and parking his squad car in a parking lot directly east of the bank, the officer proceeded to a side window where he observed the suspect in a stocking mask threatening the institution's employees. Although Childers testified that he could not clearly see that Ford held a gun in his outstretched arm because of a pillar or other obstruction, he clearly saw several individuals in the bank holding their hands above their heads.

When the suspect moved toward the front door of the bank to make an escape, Officer Childers positioned himself with his gun drawn near the northeast corner of the building behind a car. Within a few seconds, the criminal fled holding a grocery bag. While Ford claims not to have heard any warnings, the officer testified that he immediately cried, "Halt, police." The suspect was unresponsive. Childers again yelled, "Halt, police." By this time, Ford

had proceeded to cross main street in front of the bank and was approximately thirty to forty feet ahead of Childers. The criminal at no time turned to view the officer. Nor apparently did Ford threaten him in any manner, although the officer stated he was concerned for his personal safety. Upon the suspect's failure to yield, Childers aimed and fired his revolver twice. Ford continued to run, disappearing into an alley.

Unaware that he had wounded the suspect, the police officer returned to the squad car to scan the area where his quarry had fled. Shortly thereafter, Childers located Ford in a nearby alley hanging across a fence which he had seemingly tried to jump. The officer ordered him to place his hands up, whereupon Ford stated, "I'm hit." The suspect was then taken into custody without resisting. A bag of money, as well as the mask and gun used in the commission of the crime, were found in the vicinity of the arrest. Ford spent approximately 20 days in the hospital for treatment of a gunshot wound.

### Analysis

To recover damages in a civil rights action under 42 U.S.C. § 1983, the plaintiff must prove as part of his burden that the defendant's actions resulted in a deprivation of constitutional rights. *Crowder v. Lash,* 687 F.2d 996, 1002 (7th Cir.1982). In the case at bar, Ford maintained, *inter alia,* the arresting officer's actions constituted an unreasonable seizure under the Fourth Amendment which, in turn, deprived him of a recognized liberty interest without due process of law under the Fourteenth Amendment. Undeniably, the use of deadly force is a seizure subject to the Constitution's reasonableness requirement. Thus, the propriety of the apprehension necessarily determines the due process claim.[1] If the arrest was proper, Plaintiff cannot claim a dispossession of liberty.

---

1. This Court is aware of the Seventh Circuit's decision in *Gumz v. Morrissette,* 772 F.2d 1395 (1985), where Plaintiff's claim of excessive force in making an arrest was analyzed as one of substantive due process under the Fourteenth Amendment. In that case, however, the Fourth Amendment allegations were dismissed by the district court. That ruling was not contested.

The parties agree that the constitutional guidelines for the use of deadly force in apprehending a fleeing felon set forth in *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), govern this controversy.[2] That case concerned the constitutionality of the use of deadly force to seize an apparently unarmed burglar. The Supreme Court reasoned:

> [I]f the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Id.* at 11–12, 105 S.Ct. at 1700–1701. The facts in this instance establish that Ford posed no threat to Officer Childers. Therefore, the issue becomes two-fold: Whether reasonable minds could differ as to (1) the officer's probable cause in forbidding the Plaintiff from eluding capture, and (2) the existence of any necessary warning prior to the arrest. *See Hill v. Jenkins*, 620 F.Supp. 272, 275 (N.D.Ill.1985).

■ In order to determine if Officer Childers utilized deadly force within constitutional boundaries, the Court initially must look to why the officer deemed it necessary to fire his revolver at Ford. Since probable cause in cases such as this turns upon the reasonableness of the officer's belief, the analysis necessarily entails only a review of the facts known to him at the time of the occurrence. *Garner*, 471 U.S. at 21, 105 S.Ct. at 1706; *see also Hill*, 620 F.Supp. at 276.

■ Clearly, the undisputed facts in this case illustrate the reasonableness of the officer's belief that Ford had committed a crime involving the threatened infliction of serious physical harm. Childers stated he observed employees inside the bank holding their hands above their heads during the commission of the offense. This uncontradicted perception alone is enough to indicate that the suspect was endangering the lives of innocent bystanders with a weapon. No reasonable juror could find otherwise. Although the officer could not actually see the Plaintiff's gun, this fact becomes immaterial when coupled with the presumption arising from the position of the likely victims. Unquestionably, Officer Childers had probable cause to fire upon the fleeing felon. The threat Ford posed not only to those inside the bank but also to the entire community justified the use of deadly force.

■ Likewise, even assuming *arguendo* that the exigent circumstances required "some warning," Plaintiff did not refute the officer's testimony that he yelled, "Halt, police," twice prior to wounding Ford. Admittedly, Ford stated he heard no warning. Nevertheless, such self-serving statements are insufficient to meet his burden before a jury. Plaintiff presented no evidence that Childers actually failed to warn although at least one other police officer was present during the incident.[3] Given the need for an expeditious getaway, it is quite possible the Plaintiff heard nothing but his own footsteps.

Consequently, the actions of Officer Childers fall well within the constitutional

---

Still, the majority's approach was questioned in a vigorous concurrence by Judge Easterbrook in which he reasoned that all claims of excessive force should be assessed under Fourth Amendment standards. *Id.* at 1404–09. That problem is not present in the case at bar, however, since *Garner*, 471 U.S. at 1, clearly establishes the propriety of an unreasonable seizure analysis where both Fourth and Fourteenth Amendment claims remain.

**2.** As previously mentioned, Defendants also argue that Childers complied with the Illinois deadly force statute. Ill.Rev.Stat. ch. 38, ¶ 7–5 (1985). According to the Supreme Court, that

law apparently passes constitutional muster. *Garner*, 471 U.S. at 17 n. 18; *see also Crawford v. Edmonson*, 764 F.2d 479, 482 n. 2 (7th Cir. 1985). Although the Court agrees that the officer's conduct undoubtedly adhered to the statute's guidelines, a separate analysis is not warranted since today's opinion focuses upon the constitutionality of Childers' actions rather than the insufficiency of any pendent tort claims.

**3.** Officer Sheila Nation also responded to the dispatch and was near Childers during the shooting.

boundaries established in *Garner*. The evidence is so one-sided that the Defendants must prevail as a matter of law. Viewing the facts in a light most favorable to the Plaintiff, no reasonable jury could find that Ford was deprived of any Fourth or Fourteenth Amendment guarantees.

The directed verdict was properly entered for the Defendants. It will not be set aside.

*Ergo*, Plaintiff's motion for a new trial is DENIED.