**Larry FORD, Plaintiff–Appellant,**

**v.**

**David CHILDERS, Roger Jones and City of Taylorville, Illinois, Defendants–Appellees.**

**No. 87–1090.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 17, 1987.

Reheard En Banc Feb. 23, 1988.

Decided Aug. 22, 1988.*

George F. Taseff, Bloomington, Ill., for plaintiff-appellant.

---

\* The original panel's proposed opinion affirming the district court's order was circulated among the active members of this court pursuant to Circuit Rule 40(f) because it potentially conflicted with our prior decision in *Sherrod v. Berry,* 827 F.2d 195 (7th Cir.1987). The discord between the two cases centered on the proper legal standard governing a law enforcement officer's liability for the use of deadly force. A majority voted to rehear the case en banc.

Patrick J. Londrigan, Royster, Voelker & Allen, Springfield, Ill., for defendants-appellees.

Before BAUER, Chief Judge, and CUMMINGS, WOOD, Jr., CUDAHY, POSNER, FLAUM, COFFEY, EASTERBROOK, RIPPLE, MANION, and KANNE, Circuit Judges, and PELL, Senior Circuit Judge.

COFFEY, Circuit Judge.

Plaintiff Larry Ford appeals the district court's denial of his motion for a new trial following the court's grant of a directed verdict in favor of the defendants at the close of plaintiff's case in chief. The suit, brought under 42 U.S.C. § 1983, alleged that the plaintiff's Fourth and Fourteenth Amendment rights were violated when the defendant police officer shot Ford as he was fleeing from the scene of an armed bank robbery. The plaintiff's lawsuit also contended that the defendant police department and municipality are liable since their policies and training dealing with the use of deadly force were inadequate. Consistent with today's en banc decision in *Sherrod v. Berry*, 856 F.2d 802 (7th Cir.1988), we affirm.

## I.

In the early evening of January 13, 1984, police officer David Childers responded to a silent holdup alarm at the First National Bank in Taylorville, Illinois. Childers arrived at the scene, positioned himself next to a window of the building where he could observe, and looked inside. From his vantage point, Childers was able to see several people in the bank with their arms raised above their heads. A masked individual was standing with his arm extended toward them. However, a pillar or wall partially obstructed Childers' vision, and he was unable to detect what object, if any, was in the masked man's hand. After reporting these facts to the police control room by radio, Officer Childers and his partner

moved and stationed themselves behind a car parked near the bank. Childers next observed the suspect run out of the bank carrying a bag in his hand. Although Childers testified that on two separate occasions he called out, "Halt, police," to the fleeing suspect, the plaintiff Ford claimed not to have heard anything. When these verbal warnings went unanswered and the suspect continued to flee, the officers each fired shots at the suspect. Despite the gun fire, the suspect continued to run and turned onto another street. A short time thereafter, the suspect was captured and identified as the plaintiff, Larry Ford. At this point, Officer Childers discovered that the plaintiff had been shot in the back. Due to the seriousness and location of the gunshot wound, Ford was conveyed to a hospital and confined for 20 days. Subsequently Ford was charged and pleaded guilty to armed robbery and was sentenced to a period of seven years' imprisonment.

Ford initiated this action pursuant to 42 U.S.C. § 1983, alleging that the officers' use of their weapons under the circumstances violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. He also charged Police Chief Jones and the City of Taylorville, Illinois, with failing to adequately train Officer Childers regarding the proper use of his service revolver. In their answer the defendants denied the allegations and further raised the affirmative defenses of qualified immunity and justifiable use of force under Illinois law.

The plaintiff's expert witness (in a deposition read to the jury) opined that both the Taylorville police manual and the City's training procedures inadequately deal with the question of when the use of deadly force is appropriate. The witness rendered his opinion of the inadequacy of the training program after reviewing the content of the materials submitted to him, including Officer Childers' statement that his actions comported with the training he had received.[1] The expert also testified that Officer Childers' use of deadly force under the

---

1. Plaintiff's expert testified as follows:
   "Q Now, in the materials you've reviewed, did you note that Officer Childers stated that

   at the time of this particular occurrence he did exactly what he was trained to do?
   A That's correct.

circumstances violated Illinois' "deadly force" statute,[2] the Taylorville Police Department Duty Manual, and generally accepted police practices. In support of this opinion, the expert noted that (1) the arresting officers had improperly positioned themselves at the corner of the bank building (rather than the front); and (2) the officers were too quick to resort to the use of deadly force (as opposed to giving chase on foot or calling in reinforcements). The district court granted the defendant's motion for a directed verdict at the close of plaintiff's case in chief.[3] The court's subsequent denial of plaintiff's motion for a new trial, 650 F.Supp. 110, resulted in this appeal.

## II.

The principal issue in this case is whether the district court properly granted the defendant's motion for directed verdict with respect to Ford's claim of the officer's use of excessive force. In reviewing the trial court's decision to grant a directed verdict under Fed.R.Civ.P. 50(a), we examine the evidence in a light most favorable to the non-moving party, *Davis v. Lane*, 814 F.2d 397 (7th Cir.1987), resolving all conflicts in the evidence in favor of the nonmovant. *Yarbrough v. Tower Oldsmobile, Inc.*, 789 F.2d 508, 511–12 n. 5 (7th Cir.1986). If reasonable persons could differ on the conclusions to be drawn from the evidence, a verdict should not be directed. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986); *Pliska v. City of Stevens Point*, 823 F.2d 1168, 1174 (7th

> Q Sir, if the training of Officer Childers was that he should do exactly what officer Childers did in this occurrence, in your opinion, sir, with your vast experience in the training of police officers, in your involvement in the teaching and the preparing of teaching materials for the teaching of police officers, would that training, in your opinion, sir, be inadequate training?
>
> \*   \*   \*   \*   \*   \*
>
> THE WITNESS: If that was the training, it would be improper training, yes, sir.
>
> MR. BAIRD: Q Sir, is it your opinion that such training, such improper training led to the shooting of Larry Ford?
>
> A Yes, sir."

2. The Illinois statute on the use of deadly force reads as follows:

> "(a) a peace officer, or any person whom he has summoned or directed to assist him, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he reasonably believes to be necessary to effect the arrest and of any force which he reasonably believes to be necessary to defend himself or another from bodily harm while making the arrest. However, he is justified in using force likely to cause death or great bodily harm only when he reasonably believes that such force is necessary to prevent death or great bodily harm to himself or such other person, or when he reasonably believes both that:
>
> (1) such force is necessary to prevent the arrest from being defeated by resistance or escape; and
>
> (2) the person to be arrested has committed or attempted a forcible felony or is attempting

to escape by use of a deadly weapon, or otherwise indicates that he will endanger human life or inflict great bodily harm unless arrested without delay."

Ill.Rev.Stat. ch. 38, ¶ 7–5 (1985).

The plaintiff's expert testified that in his opinion Officer Childers' use of deadly force violated ¶ 7–5 because the force was not "necessary to prevent the arrest from being defeated" as required under subparagraph (1). The witness explained that:

> " 'Defeat' means the game is over, the final whistle is blown and you have been defeated in your attempt to arrest that person. That's when you utilize the firearm. The whistle hadn't even been sounded in this game and the weapon had already been used."

We note that the witness' testimony that "[t]he whistle hadn't even been sounded in this game" ignores Officer Childers' direct testimony that he warned Ford on two separate occasions before firing a shot.

3. Although we now affirm the judgment of the district court, we caution the district court against using over-broad language, which constitutes a misstatement of the law. For example, the district court's opinion order begins:

> "Ford robbed a bank.
> He was shot while fleeing from the scene.
> Can he now sue the officer who shot him for violating his civil rights?
> Of course not!"

As we outline below, the district court's initial statement of the law does not accurately reflect the standard governing this case as found in *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

Cir.1987).[4] Thus,

> "in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."

*Anderson,* 477 U.S. at 251, 106 S.Ct. at 2511 (quoting *Improvement Company v. Munson,* 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867 (1872) (emphasis in original)); *Richardson v. City of Indianapolis,* 658 F.2d 494, 498 (7th Cir.1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1442, 71 L.Ed.2d 657 (1982). Since Ford bears the burden of persuasion, he has the duty of demonstrating the existence of a material conflict in the evidence or that the inferences to be drawn therefrom are sufficient to justify submission to a jury on the issue. *Richardson,* 658 F.2d at 498 (citing *Krivo Industrial Supply Company v. National Distillers & Chemical Corp.,* 483 F.2d 1098, 1102 (5th Cir.1973)).

Today's decision in *Sherrod v. Berry,* 856 F.2d 802 (7th Cir.1988) (en banc), applied an "objective reasonableness" standard to fourth amendment excessive force and arrest claims. In *Sherrod,* we held that under the Supreme Court's decision in *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), and this circuit's opinion in *Lester v. City of Chicago,* 830 F.2d 706 (7th Cir.1987), the "objective reasonableness" standard requires the trier of fact to weigh the totality of the facts and circumstances known to the officer at the time of his actions in determining whether those actions were "objectively reasonable." According to the Supreme Court, while the use of deadly force is unreasonable if intended merely to prevent a felon's escape, such force is reasonable if, based on the facts and circumstances known to the officer at the time, the officer has "probable cause" to believe that the suspect poses a threat of serious physical harm to the officer or to others and, if feasible, warns the suspect:

> "Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given."

*Tennessee v. Garner,* 471 U.S. at 11–12, 105 S.Ct. at 1701. Since a determination of probable cause turns "on the assessment of probabilities in particular factual contexts —not readily or even usefully, reduced to a neat set of legal rules," *Illinois v. Gates,*

---

**4.** When resolving the preliminary question of whether the entry of a directed verdict or summary judgment is proper, the trial court is to decide: *"[W]hether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in a light most favorable to the party against whom the motion is directed." Tice v. Lampert Yards, Inc.,* 761 F.2d 1210, 1213 (7th Cir.1985) (emphasis added). *See also Webb v. City of Chester,* 813 F.2d 824, 827–28 (7th Cir.1987).

> "The district judge is not to resolve conflicts in testimony or weigh and evaluate the evidence, functions that are reserved to the factfinder.... If the evidence, taken as a whole, provides a sufficient probative basis upon which a jury could reasonably reach a verdict, without speculation over legally unfounded claims, the motion should be denied."

*Anderson v. Gutschenritter,* 836 F.2d 346, 348 (7th Cir.1988). In conducting this inquiry, a trial judge must realize that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury questions, not those of a judge...." *Anderson,* 106 S.Ct. at 2513. The trial judge's in-court comments during his ruling on the defendant's directed verdict motion made us pause and wonder whether he applied the proper standard in reaching his decision. For instance, the judge commented: "You want to talk about diGratzia [the plaintiff's expert]? I found the foundation for Mr. diGratzia's expertise to be highly suspect and highly questionable. *I was not at all impressed by his testimony,* and this training business is really almost a red herring." But whether a judge is impressed with a witness' testimony is not the question (that is for the jury's decision). Nevertheless, as we hold and explain in the text of this opinion, the entry of a directed verdict in favor of the plaintiffs was proper despite the expert's testimony because *even assuming his credibility as a witness,* a jury could only draw one reasonable conclusion from the evidence: that Childers' use of deadly force under the circumstances was "objectively reasonable."

462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983), it is usually a jury question in a damages suit. *See Llaguno v. Mingey,* 763 F.2d 1560, 1565 (7th Cir. 1985). Nonetheless, we have ruled that the existence of probable cause is a question for the jury only "if there is room for a difference of opinion." *Gramenos v. Jewell Companies, Inc.,* 797 F.2d 432, 438 (7th Cir.1986), *cert. denied,* ─── U.S. ───, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987) (quoting *Llaguno,* 763 F.2d at 1565).

■ The defendant argues that a reasonable jury could only conclude that Officer Childers' conduct was objectively reasonable under the *Garner* standard because his conduct comported with the Illinois statute on deadly force,[5] a statute which "seems to pass constitutional muster." *Crawford v. Edmonson,* 764 F.2d 479, 482 n. 2 (7th Cir.), *cert. denied,* 474 U.S. 905, 106 S.Ct. 273, 88 L.Ed.2d 234 (1985) (noting that the Supreme Court, in *Garner,* 471 U.S. at 17 n. 18, listed Illinois "as one of 18 states allowing the use of deadly force only in circumstances deemed appropriate [in the *Garner*] opinion."[6]) Nonetheless, we need not pass on the constitutional validity of the Illinois statute on deadly force since, as we explain below, we hold that only one conclusion can reasonably be drawn from the undisputed evidence: that Childers' actions were objectively reasonable under the circumstances leading to his decision to fire his revolver at Ford.[7]

The uncontroverted evidence establishes that Childers, after warning Ford on two separate occasions, fired at Ford because he reasonably believed that the suspect had committed a felony involving the threat of deadly force, was armed with a deadly weapon, and was likely to pose a danger of serious harm to others if not immediately apprehended.

■ As noted previously, whether a law enforcement officer acted reasonably in using deadly force under the facts and circumstances of a particular case is analyzed under the fourth amendment's "objective reasonableness" standard. *Sherrod v. Berry,* 856 F.2d 802 at 804 (citing *Lester v. City of Chicago,* 830 F.2d 706, 711 (7th Cir.1987) (applying the fourth amendment objective reasonableness standard to excessive force and arrest claims)). This standard "requires that [Officer Childers'] liability be determined exclusively upon an examination and weighing of the information [he] possessed immediately prior to and at the very moment he fired the fatal shot." *Sherrod v. Berry,* at 805.

■ The plaintiff's evidence in this case establishes the following: Officer Childers responded to a silent holdup alarm at the First National Bank of Taylorville, Illinois. Upon his arrival he observed a masked individual standing in the bank with his arm extended toward several people who had their arms raised above their heads. He later observed the suspect fleeing the bank carrying a bag in his hand. Even though Officer Childers did not actually see a weapon in the suspect's hand (a post obstructed his view of the suspect's hand), given the information he possessed at that particular time and the observations he made, Childers reasonably concluded that the suspect was armed and dangerous. As we recognized in another § 1983 action concerning a police shooting, a reasonable belief that danger exists may be formed by reliance on appearances. *Davis v. Freels,* 583 F.2d 337, 341 (7th Cir.1978) (quoting

---

**5.** *See supra* note 2.

**6.** In *Garner,* 471 U.S. at 11–12, 105 S.Ct. at 1701–02, the Supreme Court outlined as follows the circumstances under which the use of deadly force to apprehend a fleeing suspect is justified:

"Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with

a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given."

**7.** The appellant brought this action under 42 U.S.C. § 1983 and did not allege a pendent claim based on the officer's failure to act in accordance with state law. Thus, we review only the constitutionality of Childers' actions.

from 6 Am.Jur.2d Assault and Battery, § 161 at 135 (1963)). And as we noted today, " 'no right is guaranteed by federal law that one will be free from circumstances where he will be endangered by the misinterpretation of his acts.' " *Sherrod v. Berry*, at 805 (quoting *Young v. City of Killeen, Tx.*, 775 F.2d at 1353). In view of the totality of the information Officer Childers possessed when he fired at Ford, we hold that a reasonable jury could only conclude that Officer Childers had probable cause to believe that Ford posed a threat of serious physical harm to himself and/or to others. Thus, Childers' actions under the circumstances were objectively reasonable as a matter of law.

Our review of the record further confirms that Officer Childers warned Ford on two separate occasions before the officers fired. Officer Childers testified that he provided the warnings, calling "Halt, police" twice before firing his service revolver. Considering that (1) the evidence established that at the time Ford was wearing both a mask and a hood, which could very well have muffled the plaintiff's opportunity to hear the warnings, and (2) the plaintiff did not testify that warnings were not given but only that he did not hear any warnings, Ford's testimony fails to contradict the officer's positive testimony that he warned Ford twice before firing a shot. Consequently, the plaintiff's testimony that he did not *hear* any warnings fails to present a question of material fact as to whether the giving of the warnings was feasible and if in fact they were given.[8] Since we agree that Officer Childers had probable cause to believe that Ford posed a threat of serious physical harm to himself and/or to others and warned Ford before firing his revolver, he did not deprive the plaintiff of his fourth and fourteenth amendment rights. Accordingly, we hold

that the district court's directed verdict in favor of Officer Childers must be affirmed.

While we affirm the court's decision that the defendant's use of deadly force did not violate Ford's constitutional rights, we are impelled to emphasize that this court must and will continue to be vigilant in ensuring that when an officer makes the critical judgment to use deadly force, his or her actions will be subject to scrutiny and review. As noted above, an officer oftentimes has only a split second to make the critical judgment of whether to use his weapon. But this fact alone will never immunize an otherwise unreasonable use of deadly force. *Because we as Americans respect the dignity of human life, the firing of a weapon must never become an automatic response to the law enforcement officer when attempting to capture a fleeing felon. Law enforcement officers must never forget that their decision to use a weapon must be reasonable given the totality of the facts and circumstances known to them at the critical moment the decision is made to use deadly force.* Quoting from another § 1983 action dealing with respect for human life,

> "[w]e firmly believe that the failure of prison authorities to even review an inmate's file to determine his or her proclivity for violence and/or whether they [individual prisoners] are a gang-target in the face of gang-related threats and violence manifest utter disregard for the value of human life. This we will not condone, for in America we respect the sanctity of human life, including those confined in penal institutions."

*Walsh v. Mellas*, 837 F.2d 789, 798 (7th Cir.1988).

Since we hold that Officer Childers acted reasonably under the circumstances, it follows that the police chief and the City of

---

**8.** We are reluctant to second-guess an officer's split-second judgment to use deadly force, except in the absence of a constitutional violation, when he reasonably believes that an armed and dangerous felon is escaping arrest. We as judges have minutes, hours, days, weeks, even months to analyze, scrutinize and ponder whether an officer's actions were "reasonable," whereas an officer in the line of duty all too frequently has only that split-second to make the crucial decision. As we explain in the text, the officers' split-second decision to use their weapons, after twice warning the suspect, was objectively reasonable under the circumstances. We refuse to impose as an additional constitutional requirement the firing of a warning shot before deadly force may be used.

Taylorville, Illinois, cannot, as a matter of law, be held liable to Ford as their liability was dependent upon the unreasonableness of Officer Childers' actions. That is to say, if Officer Childers acted reasonably under the circumstances (thus not causing a constitutional deprivation of Ford's rights), we must also hold that the police chief and the City of Taylorville cannot be held liable under *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

For the aforementioned reasons, we affirm the district court's grant of a directed verdict in favor of the defendants.

AFFIRMED.

CUMMINGS, Circuit Judge, concurring.

I found it necessary to dissent from the en banc opinion in *Sherrod v. Berry,* 856 F.2d 802 (7th Cir.1988), because, on a ground waived by the defendants, it improperly upset a district judge's evidentiary ruling. No such problem is present in *Ford.* There is therefore no need to dissent here.

CUDAHY, Circuit Judge, with whom CUMMINGS, Circuit Judge, joins, concurring:

The view reflected in the first footnote to the majority opinion (and elsewhere) that this case is somehow comparable with *Sherrod v. Berry* (and, specifically, that the panel opinion in this case "potentially conflicted" with the panel opinion in *Sherrod*) is specious and disingenuous. In fact, the only possible reason for subjecting this routine case to en banc review is to lend some sort of credibility to the rehearing of the strikingly different *Sherrod* case.

This case involves a lawman shooting at a masked and apparently armed bank robber fleeing the scene of the crime—a classic setting for gun play and one where deadly force is clearly permitted under *Garner. Sherrod,* on the other hand, involves what a jury presumably found to be a wanton killing of the young driver of a car stopped on the street. There the unarmed victim, shot in the head at point blank range, had committed no crime and couldn't even reasonably be suspected of having committed one.

In *Sherrod,* the jury awarded the victim's father $1.5 million in damages, a verdict which this court en banc has nullified on a virtual technicality. The miscarriage of justice that I respectfully believe to be the outcome in *Sherrod* is not made more palatable by sophistical comparisons with this case, a routine and wholly unexceptionable use of deadly force by a peace officer.