**POUGHKEEPSIE SAVINGS BANK, FSB, Plaintiff,**

v.

**Joseph M. HARRIS and Jane D. Harris, Defendants.**

No. 3:92–CV–108–P.

United States District Court,
W.D. North Carolina
Charlotte Division.

Oct. 1, 1993.

Mark C. Kirby, Raleigh, NC, for plaintiff.

Mark T. Calloway, William K. Diehl, James McElroy & Diehl, P.A., Bentford E. Martin, Blair, Conaway, Bograd & Martin, Charlotte, NC, for defendants.

## MEMORANDUM OF DECISION

ROBERT D. POTTER, District Judge.

**THIS MATTER** is before the Court on Plaintiff's (Poughkeepsie's) motion for summary judgment filed February 10, 1993. Defendants responded to the motion with a brief filed March 8, 1993 and Plaintiff filed its reply to the response on April 2, 1993. The Court has reviewed the motion for summary judgment and the briefs in support of it, Defendants' response to the summary judgment motion, and the relevant legal authorities. Based upon its review of this case, the Court makes the following findings of facts and conclusions of law.

### FACTS

On May 9, 1989, CTHL Properties (CTHL) executed and delivered to Poughkeepsie a note in the principal amount of $3,900,000 for a loan used to purchase a building known as 324 North College Street. CTHL was a general partnership consisting of only two partners, Joseph and Jane Harris (Defendants). Also on May 9, 1989, Mr. and Mrs. Harris each signed and executed a personal guaranty agreement with Poughkeepsie. The personal guaranty agreement provided that, "the Guarantors' payment obligation ... is limited to a maximum amount of twenty (20%) per cent (sic) of the unpaid principal balance and one hundred (100%) per cent (sic) of the interest accrued and unpaid at the time any action is commenced to collect or foreclose the loan." Plaintiff's Exhibit 2 p. 1.

Sometime after signing the note, the CTHL partnership defaulted on its note to Poughkeepsie. Poughkeepsie initiated foreclosure proceedings which included notice to Mr. and Mrs. Harris of the foreclosure sale and a hearing held on December 17, 1991. On January 24, 1992, the property was sold at a foreclosure sale to Plaintiff's wholly owned subsidiary, Raleigh Capital, for $2,000,000. Defendants did not attend the foreclosure sale and thus, did not bid on their foreclosed upon property. Since the property was sold for less than the amount of the note, Plaintiff initiated this action against Defendants, who are also the guarantors of the note, to enforce the guaranty agreement.

### SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides,

> ... judgment ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) (West 1993).

Summary judgment must be granted when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id., Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). To attain summary judgment, the movant bears an initial burden of demonstrating no genuine issues of material fact are present. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party who must point out specific facts which create disputed factual issues. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In evaluating a summary judgment motion, district courts must consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of the non-moving party. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable

minds could recognize as real factual disputes." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence from the entire record could not lead a rational fact finder to rule for the non-moving party. *Matsushita Electric Industrial Co.*, 475 U.S. at 587, 106 S.Ct. at 1356, *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552 (1986).

■ Accordingly, "the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. That is, " 'in every case, before evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.' " *Id.* at 251, 106 S.Ct. at 2511, *quoting, Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 422, 448, 20 L.Ed. 867 (1872).

### ANALYSIS

The Court finds there are no genuinely disputed material facts in this case. Therefore, it is now for this Court to render judgment as a matter of law. Defendants do not challenge the sufficiency of evidence in this case to make out a *prima facie* against them for breach of their guaranty agreement with Plaintiff. The Court finds Plaintiff has established all necessary elements to collect from Defendants. Instead, Defendants raise a defense against Poughkeepsie's claim. Accordingly, this case turns on the applicability of Defendants defense to the facts of this case.

■ Defendant claims it is entitled to avail itself of the off set defense afforded by North Carolina law. According to N.C.G.S. § 45–21.36,

When any sale of real estate has been made by a mortgagee, trustee, or other such person authorized to make the same, at which the mortgagee ... thereby secured becomes the purchaser and takes title either directly or indirectly, and thereafter such mortgagee ... shall sue for and undertake to recover a deficiency judgment against the mortgagor ... or other maker of any such obligation whose property has been so purchased, it shall be ... lawful for the defendant against whom such deficiency judgment is sought to allege and show as a matter of defense and offset ... that the property sold was fairly worth the amount of the debt secured by it at the time and place of sale or that the amount bid was substantially less than its true value, and, upon such showing, to defeat or offset any deficiency judgment against him.... N.C.G.S. § 45–21.36

Defendants claim they are entitled to raise this defense in one of two ways. First, Defendants claim the defense directly applies to them because, as partners, they owned the property which was foreclosed upon. As authority for this view, Defendants cite this Court to *NCNB National Bank of North Carolina v. O'Neill*, 102 N.C.App. 313, 401 S.E.2d 858 (1991). The *O'Neill* Court noted that "The General Assembly clearly intended to limit the protection of the statute to those who hold a property interest in mortgaged property. Parties without such an interest, but liable on the underlying debt, may not rely on the statute as a defense." *O'Neill*, 401 S.E.2d at 860. The *O'Neill* Court went on to hold, "that each partner ... holds a property interest sufficient to invoke the protection of N.C.Gen.Stat. § 45–21.36." *Id.* Defendants claim that since they were partners, and held an interest as partners in the 324 North College Street property, they are entitled to raise the defense in this case.

However, this argument ignores an obvious fact. While Defendants were partners who owned the property, they were also both guarantors of the note. Thus, as partners, they held an interest in the property, but as guarantors, they held no interest in the property. The same Court that decided *O'Neill* has also made it plain that, "other parties liable on the underlying debt, but who hold no property interest in the mortgaged property, cannot assert the defense of G.S. § 45–21.36." *Raleigh Federal Savings Bank v. Godwin*, 99 N.C.App. 761, 394 S.E.2d 294,

296 (1990). Therefore, the question becomes, is the defense available to a person who is both a property owner and obligated on the underlying debt as a guarantor when he is sued in his capacity as a guarantor?

The Court believes the § 45–21.36 defense is not available to guarantors—even when they are also property owners—if they are sued to enforce their duties as a guarantor. Defendants contend their proprietary interests were not "abolished by the mere fact that the partners guaranteed the note." Defendants Brief p. 9 Furthermore, Defendants believe, "the manner in which the[y] . . . are being sued is a distinction without a difference." *Id.* at p. 10. However, the Court finds these conclusions unpersuasive.

It is undisputed that Defendants' proprietary interest was not abolished by becoming guarantors. That interest was taken from them by a foreclosure sale which they did not, for whatever reason, contest. However, what is true for Defendants as owners is also true for them as guarantors. Defendants' status as guarantors was not abolished either by their ownership of property, or by the foreclosure on that interest. To permit Defendants to raise a defense only available to them in their capacity as owners, when they are being sued for their duties as guarantors, would erase their duty as guarantors. It is as indefensible to eradicate Defendants property interest as it is to do the same to their guarantor status.

Similarly, the manner in which they are now being sued is at least a distinction as important as that which they made when they agreed with Plaintiff to assume the dual roles of property owner and guarantor. Presumably, when Defendants decided to personally guaranty a loan that would benefit them as property owners, they thought the distinction they made between their role as owners and guarantors was at least important enough to warrant Plaintiff's decision to loan them $3,900,000. The distinction Defendant now wishes to erase was at one time very important to them. If the distinction between property owner and guarantor is important at all in this case, it is so because Defendants agreed to make the distinction

themselves by assuming both roles. Having made the distinction themselves, Defendants will not now be permitted to blur it in order to avail themselves of a defense only applicable to an aspect of their dual status which they defaulted on.

In this case, Defendants voluntarily assumed the duties of owning property and of serving as guarantors. The undisputed fact that they relinquished their duties as owners by defaulting on their note does not afford them rights that would relieve them of their duties as guarantors. It would be as strange, and as contrary to law, for them to pay more than they obligated themselves to pay as debtors as it would be for them to pay nothing at all as guarantors. Since Defendants assumed both duties, and since they chose to be treated as both property owners and guarantors, the Court can find no reason why they should not now by compelled to accept all of their duties as guarantors.

▌ Defendants also contend that if they are not availed of the § 45–21.36 defense directly, they are indirectly. Defendants direct this Court to N.C.G.S. § 26–12(b) which provides,

> When any surety is sued by the holder of the obligation, the court, on motion of the surety may join the principle as an additional party defendant. . . . Upon such joinder the surety shall have all rights, defenses, . . . and setoffs which would have been available to him if the principal and surety had been originally sued together. N.C.G.S. § 26–12(b).[1]

Assuming for the moment that this statute binds a federal court sitting in diversity, it does not provide Defendants with the defense. The operative word in this statute is "may." Therefore, the joinder contemplated by this statute is permissive. Like Defendants, this Court finds the invitation to join Defendants as property owners a needless procedural hoop and thus declines to do so in this case.

Defendants are, by their own volition, both property owners and guarantors who lack a proprietary interest. In this case, Plaintiff

---

1. According to N.C.G.S. § 26–12(a), " 'surety' includes guarantors. . . ."

has sued to compel them to observe their duty as guarantors. Because in this suit they are guarantors with no proprietary interests, they cannot raise the set off defense. *Raleigh Federal Savings Bank v. Godwin*, 99 N.C.App. 761, 394 S.E.2d 294, 296 (1990). Since they do not dispute their obligations as guarantors, and the Court finds they are liable to Plaintiff as guarantors without defense, there is no need for a trial in this case. Therefore, Plaintiff's motion for summary judgment must be granted.

**NOW, THEREFORE, IT IS ORDERED** that Plaintiff's motion for summary judgment be, and hereby is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants pay Plaintiff twenty percent (20%) of the unpaid principal note balance and one hundred percent (100%) of the interest accrued and unpaid at the time this action was commenced.

**IT IS FURTHER ORDERED** that Defendants pay Plaintiff's attorneys' fees in the amount of fifteen percent (15%) of the principal and interest due on the note the date this suit was instituted.